**COMMISSIONER OF INTERNAL REVE-
NUE v. LAMONT.**

No. 37, Docket 19857.

Circuit Court of Appeals, Second Circuit.

July 8, 1946.

I. Henry Kutz, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Josiah Willard, of New York City (White & Case and Walter S. Orr, all of New York City, on the brief), for respondent.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question here is whether partnership capital losses may be offset against individual capital gains in computing a partner's income tax for 1937 under the Revenue Act of 1936. The respondent taxpayer had reported both personal income and his distributable share of the income of J. P. Morgan & Co., a New York partnership which also did business in Philadelphia under the name of Drexel & Co. In addition, however, he showed individual capital gains and losses leaving a net taxable capital gain of $55,249.96, against which he would set off his share of partnership capital losses. The partnership had sustained losses in the sale of capital assets of $1,825,885.40, as computed under the differing percentages, according to duration of ownership, of § 117(a), Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 873. After giving effect to the deduction of $2,000 allowed the partnership under § 117(d), the taxpayer's share of the loss, based on his distributive share in partnership income of 9.980335 per cent, would be more than three times his individual capital gain. Taxpayer was also a member of certain syndicates which have been held to be partnerships and as to which like questions arise, involving comparatively small amounts, though increasing the overplus of the offset, if allowable. The Commissioner, disallowing the claimed deduction, determined a deficiency in the tax paid; but on petition to the Tax Court, Judge Kern ruled in favor of taxpayer, in a considered opinion, 3 T. C. 1217, and ordered a refund for overpayment. The Commissioner petitions for review.

There being no dispute as to the underlying facts, the issue must turn upon the correct interpretation of the statute. As the Commissioner says: "It is not disputed that this cross deduction was permitted in the Revenue Act of 1932 and permission to take it restored by the Revenue Act of 1938." The Commissioner, how-

ever, relies not only upon the language of the Revenue Acts of 1934 and 1936—identical so far as this issue is concerned—but, perhaps even more, on the legislative history of the statutory provisions, which we must examine in some detail. And since this is a matter of statutory interpretation, it is a case, on the Commissioner's contention, of "a clear-cut mistake of law," Commissioner of Internal Revenue v. Wilcox, 66 S.Ct. 546, 550, and hence within our power of review, notwithstanding the limitations stated in Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

In 1932, capital gains, taxed at 12½ per cent, were limited by definition of "capital assets" to property held by the taxpayer for more than two years, Revenue Act of 1932, c. 209, § 101(a) and (c) (8), 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, pages 504, 505; but a special provision—intended to prevent the growing custom of deducting losses on sales of securities following the fall in prices after 1929—restricted losses from sales or exchanges of stocks and bonds not capital assets to only the amount realized from gains from such sales. Id., § 23(r) (1), 26 U.S.C.A. Int.Rev.Acts, page 493. See H.R.Rep.No.708, 72d Cong., 1st Sess., 12, 13, and Sen.Rep.No.665, 72d Cong., 1st Sess., 10, both reprinted in 1939-1 Cum. Bull. (Part 2) 457, 465, 496, 503; Neuberger v. Commissioner of Internal Revenue, 311 U.S. 83, 85, 61 S.Ct. 97, 85 L.Ed. 58. There was also a provision, § 186, 26 U.S.C.A. Int.Rev.Acts, page 545, most significant for our later history, providing for the taxation to each individual partner of his share not only of the ordinary net income, but also of capital net gain and capital net loss "at the rates and in the manner provided in section 101(a) and (b), relating to capital net gains and losses."

It will be well first to state succinctly the statutory changes before we pass to a consideration of the legislative background. In the National Industrial Recovery Act of June 16, 1933, c. 90, 48 Stat. 195, there was included an amendment, effective January 1, 1933, to the provisions for "Tax of Partners," Revenue Act of 1932, § 182(a), 26 U.S.C.A. Int.Rev.Acts, page 544, stating that "No part of any loss disallowed to a partnership as a deduction by section 23(r) shall be allowed as a deduction to a member of such partnership in computing net income." This had the effect of disallowing such deductions as are here claimed.[1] But the 1934 Act made a substantial change in the taxation of capital gains and losses, as a consequence of which this amendment and the entire provision of § 23(r) (1), as well as the general partnership provision of § 186, all dropped out of the statute. By the new plan the gain or loss upon the sale or exchange of a capital asset (no longer restricted to property held by the taxpayer for more than two years) was computed upon a sliding scale depending upon the time held, beginning at 100 per cent where the property had been held for a year or less and declining to 30 per cent where it had been held for more than ten years. And capital losses were allowed only to the extent of $2,000 over the amount used to offset capital gains. Revenue Act of 1934, c. 277, § 117, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Acts, page 707. The provisions as to partnership returns, including that for the computation of the net income of the partnership—of which each partner must return his distributive share as a part of his net income—"in the same manner and on the same basis as in the case of an individual" were continued, except for the omission of § 186, as noted above. Id. Supp. F, particularly §§ 182, 183, 26 U.S.C.A. Int.Rev.Acts, page 728. These sections were re-enacted in the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 897. But in the 1938 Act, provision was made for segregation in the partnership return of the items of capital gains and losses, and, in quite specific terms, for the inclusion of the individual partner's "distributive share" of the partnership capital gains and losses in computing his net income. Revenue Act of

---

[1] The opinion of the Tax Court states: "This would cover the situation here, except that the disallowance applies to ordinary losses and not capital losses." But, as appears above, losses on sales of stocks and bonds held for two years or less were not capital losses under the 1932 Act.

1938, c. 289, §§ 182, 183, 52 Stat. 447, 26 U.S.C.A. Int.Rev.Acts, pages 1085, 1086.

Both taxpayer and the court below stress the omission of the 1933 amendment from later acts; but their chief reliance is upon the Neuberger case, supra. In fact taxpayer originally did not claim the deduction, but filed a claim for refund based upon that decision after its announcement in November, 1940. In relying on this case they are forced to the interesting analysis of having to repudiate as ill-considered dictum what the opinion says about the course of legislative history, here important, in order to stress what they consider the implications of the actual holding. That case and the companion case of Mosbacher v. United States, 311 U.S. 619, 61 S.Ct. 167, 85 L.Ed. 393, concerned income taxes for the year 1932, turning upon the converse of the case here, i. e., the offsetting of individual stock losses against partnership profits.[2] As we have seen, these were not "capital assets" as the law then stood. The Court, three justices dissenting, allowed the deduction. This was a reversal of the decision below, Neuberger v. Commissioner of Internal Revenue, 2 Cir., 104 F.2d 649, which followed Johnston v. Commissioner of Internal Revenue, 2 Cir., 86 F.2d 732, 734, certiorari denied 301 U.S. 683, 57 S.Ct. 784, 81 L.Ed. 1341, where this court had held that under the 1932 Act the partnership was a "tax computing unit," and that the 1933 amendment was only "inserted out of abundant caution when that law was passed and as but a clarification of existing law." The Supreme Court said, however, 311 U.S. 83, 88, 61 S.Ct. 97, 101, 85 L.Ed. 58, that in this Act "Congress recognized the partnership both as a business unit and as an association of individuals" and, finding no specific prohibition of the deduction of individual losses from the partner's distributive share

of partnership income, held it allowable. And this, so the argument goes, leads to a like holding in the converse situation here in view of the omission of the 1933 amendment from later acts.

But the Supreme Court itself had a different interpretation. It held its conclusion to be "confirmed by the action of Congress since 1932." Citing first the 1933 amendment as reaching "the converse of the instant case" (i. e., the case here), it continued: "More significantly, in 1938, after the Treasury Department had ruled to the contrary [citing the Treasury Regulations, infra], Congress expressly provided for the deduction of individual security losses from similar partnership gains [citing the 1938 Act, supra, and the House Committee Report, infra]. That the amendment of 1933 changed and the Revenue Act of 1938 restored the law of 1932 as we have explained it is plain from the legislative history of the two Acts and of § 23(r) (1)." Neuberger v. Commissioner of Internal Revenue, supra, 311 U.S. 83, 89, 90, 61 S.Ct. 97, 102, 85 L.Ed. 58.

We, too, think this conclusion is plain from the legislative history, and we think it is made incontrovertible by the repeated statements made as to the purpose and intent of the 1934 Act during its passage. Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407. The court below considered this inconclusive. But we do not see how it can be so regarded; on the contrary, it seems unusually convincing. Moreover, it is supported by both contemporaneous and subsequent interpretation without a dissent, so far as we can discover, until the recent rulings of the Tax Court.[3]

The first step in this legislative development, the 1933 amendment, occurred under dramatic circumstances which colored and conditioned the later steps. On May 23

---

[2] As the Commissioner points out, the court below was in error in regarding the Mosbacher case as identical with the present one. Compare the case below, 30 F.Supp. 703, 706, 707, 90 Ct.Cl. 247, Findings 8, 15.

[3] In this case and in Goodbody v. Commissioner, 2 T.C. 700, 701, involving the converse or Neuberger situation and distinguishing the present one. The ear-

lier case of Wadel v. Commissioner, 44 B.T.A. 1042, was contra. Each of these cases is by a different tax judge. The opinion below also cites Jennings v. Commissioner of Internal Revenue, 5 Cir., 110 F.2d 945, certiorari denied Helvering v. Jennings, 311 U.S. 704, 61 S.Ct. 169, 85 L.Ed. 457; but this was the case approved and followed in the Neuberger case and adds nothing more.

and 24, 1933, the Senate Committee on Banking and Currency, conducting its now famous investigation, had heard the testimony of Mr. J. P. Morgan, head of the taxpayer's firm, showing the reduction in taxes paid by the Morgan partners from 1929 through 1930 to 1931 and 1932, in which latter years not a single partner paid any tax. Hearings before the Senate Committee on Banking and Currency, 73d Cong., 1st Sess., Pt. 1, 53, 72, 198–200; Sen. Rep.No.1455, 73d Cong., 2d Sess., 321; Pecora, Wall Street under Oath, 1939, c. 9. There was like testimony as to another great Wall Street firm, and this was highlighted by Mr. Morgan's testimony that he had continued to pay income taxes to the British government—under a system not taxing capital gains and losses—during the years he had paid none to the United States. There was no doubt, as shown in the congressional discussion, of the intent to correct this situation at once, and then more permanently in a more general tax law. See, e. g., 77 Cong.Rec. 4101–4102, 4152, 4386, 4527–4528, 5068, 5416–5419, 5697, and elsewhere passim. See also H.Res. 183, 77 Cong.Rec. 5701, authorizing the House Committee on Ways and Means, either as a whole or as a subcommittee, to sit in vacation to investigate methods of improving and simplifying the revenue laws and of preventing their evasion and avoidance, as well as possible new sources of revenue. Tyler and Ohl, The Revenue Act of 1934, 83 U. of Pa.L.Rev. 607, 1935.

The Commissioner's brief sets forth in inclusive detail and with appropriate citations the report of the subcommittee thus constituted and the course of developments which led to the shaping of the final bill. For brevity's sake we omit this detailed history beyond reference to the difference in point of view which developed between the congressional committee, supporting disallowance of any partnership loss against individual income, and treasury officials, who feared that thereby many small partnerships might suffer unfair treatment: Not until the bill reached the Senate was the final settlement arrived at of the intermediate position represented in the statute as enacted whereby there was allowed a deduction of $2,000 for capital losses beyond capital gains and no more. See Revenue Acts of 1934 and 1936, § 117(d), 26 U.S. C.A. Int.Rev.Acts, pages 708, 875, supra. That there was to be no more, the important point for us here, was expressly stated in the committee reports. Thus the House Report, after referring to the terms of § 117(d) (as it then was, before the $2,000 allowance had been inserted), said: "Thus the partnership can have no capital net loss and therefore the partner can have no deduction on account of any capital loss of the partnership." H.R.Rep.No.704, 73d Cong., 2d Sess., reprinted in 1939-1 Cum. Bull. (Part 2) 554, 567. This was reiterated explicitly later in explaining why the change in definition of capital assets made necessary the omission of the 1933 amendment—an explanation repeated as to the omission of § 186 of the 1932 Act. Id. 579.[4]

In the Senate the deduction of capital losses in excess of capital gains to the extent of $2,000 was allowed in order to protect "the little taxpayer with little or no capital from being assessed a tax which he may be unable to pay." Sen.Rep.No.558, 73 Cong., 2d Sess., 12, reprinted in 1939-1 Cum.Bull. (Part 2) 586, 595. Beyond that the Senate Finance Committee Report either quoted from or was practically identical with the House Report stated above. Id. 600, 617, 618. In presenting the bill to the Senate, Senator Harrison, as chairman of the Finance Committee, said: "Un-

---

[4] "Second, the provisions of existing law which prohibit the partners from using stock losses disallowed to the partnership in computing their individual net incomes have been omitted from the bill. This change was necessary because such provisions applied only to losses on stocks and bonds held for not more than two years. The bill, in section 117, treats all capital losses alike whether from stocks, bonds, or other property.

Under the proposed method of treating capital gains and losses, a partner will not be permitted to reduce his income by any capital losses disallowed to the partnership. * * *

"Section 186 (Revenue Act of 1932). Capital net gains and losses: This section is omitted on account of the change in policy in taxing capital gains and losses." 1939-1 Cum.Bull. (Part 2) 579.

der the bill, the partnership will be permitted to deduct losses on the sale of capital assets only to the extent of gains from such sales, and the partner can have no deduction on account of any capital net loss of the partnership. In this way the main source of the tax avoidance by banking and security partnerships in the past has been eliminated. It is anticipated that this change alone will result in $5,000,000 additional revenue." 78 Cong.Rec. 5847. This general position was supported in statements on the part of managers in the House,[5] by strong opponents of the legislation in objecting to its consequences,[6] by the text writers cited supra, Tyler and Ohl, 83 U. of Pa.L.Rev. 607, 630, 631, by Mr. Mertens, in Volume 6 of his Law of Federal Income Taxation, § 35.16, pp. 117, 118, 120, and by the Neuberger case, supra.

█ Moreover, the same conclusion was embodied in Treasury Regulations 94, promulgated under the Revenue Act of 1936, arts. 181-1, 182-1, 183-1, 184-1, 185-1, 187-1, 187-2, which under well-settled principles— indeed referred to in the Neuberger case— are to be given great weight except when clearly contrary to congressional intent. And the legislative history of the 1938 Act, restoring the deduction, explicitly adopts the same view. Thus the Subcommittee of the Committee on Ways and Means gave the correct explanation for the elimination of the 1933 amendment when it said that this provision "was not retained by the Revenue Act 'of 1934 for the reason that the elimination of section 186 of the Revenue Act of 1932 by the 1934 Act, which permitted the allocation of partnership capital net losses to the individual members, rendered such provision unnecessary." The report goes on to point out that the partnership net income was determined in the same manner as that of the individual and thus subject to the provisions of § 117(a)

and the limitations of § 117(d) of the 1934 and 1936 Acts. "The net result was that the net capital losses realized by partnerships were no longer available to the individual partners as offsets against either their ordinary incomes or their capital gains." Proposed Revision of the Revenue Laws of 1938, Report of the Subcommittee of the Committee on Ways and Means, 75th Cong., 3d Sess., 43, 44. This recommendation was adopted by the full committee, which noted the "departure from the principle adopted in the Revenue Acts of 1934 and 1936 to the extent that it enables capital net losses of the partnership in the respective categories to be applied, on the basis of the partners' allocable shares thereof, to offset their individual capital net gains in the same categories." H.R.Rep.No.1860, 75th Cong., 3d Sess., 42, 43, reprinted in 1939-1 Cum.Bull. (Part 2) 728, 759.

█ Conceding their trend and meaning, taxpayer and the Tax Court discount the interpretative value of these later actions by Congress, though they were relied on as persuasive in the Neuberger case itself. See also United States v. Stewart, 311 U.S. 60, 64, 61 S.Ct. 102, 85 L.Ed. 40. It is also suggested that they were induced by the lower court decisions which were disapproved in the Neuberger case. But the reports themselves show that they go on a different rationale, the one in fact which we accept and adopt. That is in short that the elimination of § 186 of the 1932 Act and the change in system of computing and allocating capital net losses and gains, including the specific allowance of the $2,000 deduction, rendered any further prohibition of a deduction unnecessary to make clear the intent of the 1934 and 1936 Acts. Under the circumstances, the inclusion of a new and more extensive negative—which is the real demand of taxpayer and the Tax Court—would have seemed a work of su-

---

5 Chairman Doughton of the Committee on Ways and Means, 78 Cong.Rec. 2511, and 2512, where he read the letter of the Secretary of the Treasury; Committee Member Jenkins, 78 Cong.Rec. 2620; Chairman Hill of the Subcommittee on Tax Avoidance, 78 Cong.Rec. 2663 (the latter's reference to "ordinary income" in the statement "as to partnerships," that we "do not permit any net capital losses to be offset against the ordinary

income of the individual partner," is shown by the context to mean individual income, and not, as taxpayer urges, noncapital income of the partner).

6 See testimony of M. L. Seidman representing the New York Board of Trade and brief of the American Society of Certified Public Accountants, Senate Hearings before Committee on Finance on H. R.7835, 73d Cong., 2d Sess., 40, 41, 48.

pererogation indeed. We think the statute therefore requires the tax as claimed by the Commissioner. Accordingly the decision of the Tax Court is reversed for computation of the tax as herein stated.

CHASE, Circuit Judge, concurs in result.

