JOHN G. SCHERF, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31267.    Promulgated May 14, 1953.

*W. H. Albritton, Esq.*, for the petitioner.
*S. Earl Heilman, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in the amount of $4,169.17 in the income tax of the petitioner for the calendar year 1947. Petitioner was a member of a partnership that realized a gain upon sale of its assets in 1947. In filing its return the partnership did not report that gain on the installment basis under section 44 (b)[1] of the Internal Revenue Code, as it might have elected to do; rather, it reported the entire gain on a completed transaction basis. The only question is whether petitioner, as an individual partner, may in these circumstances elect to have his share of the gain taxed on the installment basis. The facts have been stipulated and are so found.

[1] SEC. 44. INSTALLMENT BASIS.

\* \* \* \* \* \* \*

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—In the case (1) of a casual sale or other casual disposition of personal property \* \* \* for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price \* \* \* the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. \* \* \*

Petitioner was a partner in S & B Manufacturing Company, a partnership composed of the petitioner, Paul W. Scherf, and J. G. Scherf, Sr. He owned a one-third interest in the partnership and was entitled to one-third of the profits.

In April 1947, the partnership sold its business and assets, consisting of machinery, equipment, and good will, for $151,115.08, payable as follows: $31,115.08 in cash, $60,000 on April 1, 1948, and $60,000 on April 1, 1949. The partnership return for the fiscal year ended September 30, 1947, reported $62,923.64 as the excess of the long-term capital gains over the long-term capital losses on the sale of the assets; it disclosed no other capital gains or losses. The partnership computed its net long-term capital gain at $31,461.82, representing 50 per cent of $62,923.64, and reported the distributive shares of the partners as follows:

| | |
|---|---|
| J. G. Scherf, Sr | $10,487.27 |
| Paul W. Scherf | 10,487.27 |
| John G. Scherf, Jr. (petitioner) | 10,487.28 |

Petitioner filed his individual income tax return for the calendar year 1947 with the collector of internal revenue for the district of Alabama. In that return he attempted to elect to report his share of the partnership net long-term capital gain on the installment basis under section 44 (b). The Commissioner ruled that petitioner's full distributive share of such gain, as reported in the partnership return, must be included in petitioner's income for the year 1947. We think the Commissioner was correct.

An understanding of the role of a partnership in our income tax laws is essential to the proper analysis of this case. Unlike a corporation or a trust, a partnership is not a taxpaying entity. Section 181 of the Code provides that the partners "shall be liable for income tax only in their individual capacity." However, section 187 requires the partnership to file a return, and section 182 [2] charges to each partner his distributive share of the net income or capital gain of the partnership, regardless of whether distribution has in fact been made. Thus, the partnership is sometimes referred to as a "tax-computing" or "accounting" unit. But such short-hand expressions do not fully indicate the part played by the partnership return.

The partnership return is more than just an information return. It

---

[2] SEC. 182. TAX OF PARTNERS.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

(a) As part of his gains and losses from sales or exchanges of capital assets held for not more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for not more than 6 months.

(b) As part of his gains and losses from sales or exchanges of capital assets held for more than 6 months, his distributive share of the gains and losses of the partnership from sales or exchanges of capital assets held for more than 6 months.

(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183 (b).

has consequences that go beyond the mere disclosure to the Commissioner of profits of the enterprise. For example, the method of accounting used by the partnership in keeping its books and making its returns is conclusive on the individual partners. Thus, a partner who is on the cash basis must nevertheless account for his distributive share of the profits computed by the accrual system of accounting, whether or not he has in fact received such profits, if the partnership keeps its books and reports its income on the accrual basis. *Percival H. Truman*, 3 B. T. A. 386; *Truman v. United States*, 4 F. Supp. 447; *Fritz Hill*, 22 B. T. A. 1079, 1083; *W. J. Burns*, 12 B. T. A. 1209; *Laurence D. Miller*, 7 B. T. A. 581, 583. Indeed, a partner is accountable for his distributive share of the profits even though state law forbids current distribution. *Heiner v. Mellon*, 304 U. S. 271, 280–281.

Similarly, even though the individual partner keeps his books and reports his income on a calendar year basis, he must nevertheless include his share of his partnership's income for the full fiscal year ending within the calendar year if the partnership has elected to keep its books and file returns on a fiscal year basis. Section 188. And in computing its net income under the revenue laws, it is generally the partnership, not the individual partner, that exercises the various options open to taxpayers in computing net income under the Code. The option to keep books on the accrual basis has already been noted above. See, in addition, I. T. 3713, 1945 C. B. 178.

We think that the option to report income on the installment basis under section 44 (b) must be treated in like manner. Indeed, if the assets sold herein were not capital assets, it is abundantly plain that the partnership return would be determinative as to whether the gain were to be treated by the individual partners on the installment basis or the completed transaction basis. Petitioner does not contend otherwise. In *Doyle J. Dixon*, 16 T. C. 1016, 1019, it was assumed and conceded that the election on the partnership return was conclusive in this regard.

The sole argument advanced by petitioner to escape these consequences is based upon the fact that the assets sold by the partnership were capital assets. He relies upon section 183.[3] But nothing in

---

[3] SEC. 183. COMPUTATION OF PARTNERSHIP INCOME.

(a) GENERAL RULE.—The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b), (c), and (d).

(b) SEGREGATION OF ITEMS.—

(1) CAPITAL GAINS AND LOSSES.—There shall be segregated the gains and losses from sales or exchanges of capital assets.

(2) ORDINARY NET INCOME OR LOSS.—After excluding all items of gain and loss from sales or exchanges of capital assets, there shall be computed—

(A) An ordinary net income which shall consist of the excess of the gross income over the deductions; or

(B) An ordinary net loss which shall consist of the excess of the deductions over the gross income.

*       *       *       *       *       *       *

those provisions in any way undertakes to render inapplicable the rule that the individual partner's distributive share of the profits, whether consisting of ordinary income or capital gain, is to be determined in accordance with the accounting system employed in the partnership return. In no way does section 183 attempt to say that the partnership's capital gains are not to be computed under the accrual system as opposed to the cash receipts and disbursements system of accounting, or on the fiscal year as opposed to the calendar year basis, or on the completed transaction as opposed to the installment sales basis—all in accordance with the method adopted by the partnership itself, rather than in accordance with a method selected separately by each partner. The only portion of section 183 relied upon by petitioner is the requirement that capital gains be "segregated." The contention apparently is that such gains form no part of the partnership return and that therefore it must be open to each of the individual partners to report such gains and to compute them in accordance with the method of accounting selected separately by each one of them. The contention is thoroughly unsound, for section 183 requires merely the *segregation* of capital gains, not their *elimination*; and the reason for the segregation is plain.

Capital gains are taxed at rates and capital losses are subject to limitations that are different from those applicable to other gains and losses. Accordingly, when a partner combines the results of his partnership's operations with those of his own, his distributive share of capital gains and losses of the partnership must be segregated in order to give effect to such special rates or limitations. After the enactment of the Revenue Act of 1934 but prior to the Revenue Act of 1938, a partner could not fully blend his own capital gains and losses with those of the partnership. Cf. *Commissioner* v. *Lamont*, 156 F. 2d 800 (C. A. 2). The substance of what is now section 183 (b) of the Code first appeared in section 183 of the Revenue Act of 1938. The 1938 Act provided for segregation, and together with certain changes made in the treatment of capital transactions, thus allowed offsetting of the individual's capital gains and losses against his distributive share of the partnership's capital gains and losses. See H. Rept. No. 1860, 75th Cong., 3d Sess., pp. 42–43. But the method of determining the capital gains or losses, whether under the accrual system, fiscal year accounting, or the installment basis, was left completely unaffected.

Petitioner would construe the word "segregated" in section 183 (b) (1) in such manner as to mean "eliminated" from the partnership return. Thus, he would regard the partnership return as having nothing to do with capital gains, with the consequence that any elec-

tion to be made with respect thereto would have to be made by the individual partners. However, it is clear from section 182, footnote 2, *supra*, that any such interpretation is wholly inconsistent with the scheme of these provisions. Section 182 carries out the theory of "segregation" rather than "elimination" and provides the machinery for allocating to each partner his distributive share of capital gain (whether short-term or long-term) as well as ordinary income. If capital gain were *eliminated* from the partnership return, there would be no reason at all for the provisions of section 182 (a) and (b).[4] Indeed, the very act of segregating the capital gains and losses as provided in section 183 (b) requires a computation by the partnership, whereby the amount of gain or loss is determined by reference to the partnership basis for the assets, section 113 (a) (13) ; the result thus obtained is reflected in the segregated income according to the method of accounting properly applicable thereto, and the distributive share of each partner is then allocated to him in accordance with section 182. The segregation provisions in section 183 (b) (1), relied upon by petitioner, were never intended to have any such unusual consequences as those urged upon us by him. Such consequences would be disruptive of the entire statutory scheme and would render nugatory the provisions of section 182 (a) and (b).

Reviewed by the Court.

*Decision will be entered for the respondent.*

———

ARUNDELL, *J.*, dissenting : The question presented is one of first impression and the answer is not free from doubt. However, I think the statute requires a different answer than the one arrived at by the majority. A partnership while generally spoken of as an income computing entity is not a tax computing entity, for it is always the taxpayer who computes the tax and the taxpayer is the partner and not the partnership.

Section 182 of the Internal Revenue Code provides how the net income of a partner will be computed and in subsections (a) and (b) it states that his distributive share of the capital gains and losses of the partnership (whether short-term or long-term) will be included

---

[4] The provisions of Section 183 (b) calling for segregation of capital gains and losses are to be contrasted with the provisions of Section 183 (c) and (d) which completely eliminate charitable contributions and the standard deduction in determining partnership net income, and which provide explicitly for the manner of allocating to the individual partner his share of any charitable contributions. The individual partner's distributive share of ordinary income and capital gains, on the other hand, is charged to him in the traditional manner by Section 182.

as part of his gains and losses from the sale or exchange of capital assets. It is only in subsection (c) that it is stated that the partner's distributive share of the ordinary net income will be as computed by the partnership as such, or in the language of the statute as computed in section 183 (b).

When we turn to section 183 (b) we find that (b) (1) provides that in computing the net income of a partnership "There shall be segregated the gains and losses from sales or exchanges of capital assets," and subsection (b) (2) provides that ordinary net income or loss will be determined "After excluding all items of gain and loss from sales or exchanges of capital assets."

This separate and distinct treatment of partnership capital gains and losses is further expressed in the offsetting of capital losses. The extent to which capital losses of a partnership are allowed to the individual partner is not limited by the capital gains of a partnership, but by his share of the capital gains plus the net income of the individual partner, or $1,000, whichever is smaller. See section 117 (d).

It is thus seen that as now provided capital gains and losses of a partnership are segregated and excluded from the computation of the ordinary net income of a partnership. The capital gains do not become a part of that income, but instead are listed in the partnership return for information purposes and enter directly into the income of the individual partners. In these circumstances, I think it is only reasonable that the individual partner determine the method of reporting and accounting for his share of the partnership gains and losses.

All agree that the transaction in question is one that constituted an installment sale within the purview of subsection 44 (b) of the Internal Revenue Code. The question whether the individual partner, as contrasted to the partnership, may make the election is, in my view, resolved by the segregation and exclusion of section 183 which in effect excepts partnership capital gains and losses from the general rule that the partnership is the income computing entity. Since the partnership capital gains and losses may not, as in the computation of ordinary income of individuals, corporations and others, be included in the ordinary net income of the partnership, but must be set aside and channelled directly to the individual partners, I think it is the individual partners rather than the partnership that must make the election under section 44 (b).

I think the petitioner should prevail.

KERN, VAN FOSSAN, HILL, JOHNSON, and BRUCE, *JJ.*, agree with this dissent.