BENTEX OIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27450. Promulgated May 29, 1953.

566

*Marvin K. Collie, Esq.*, and *C. E. Bryson, Esq.*, for the petitioner.

*J. Marvin Kelley, Esq.*, and *Paul M. Newton, Esq.*, for the respondent.

568

OPINION.

VAN FOSSAN, *Judge:* The ultimate question for decision is whether the petitioner, in computing its excess profits credit for the years 1944 and 1945, was entitled to capitalize its proportionate share, one-fourth, of the intangible drilling and development costs of the Puig Lease Operations for the years 1938 and 1939. The petitioner elected to capitalize intangible drilling and development expenses on its 1936 income tax return pursuant to the option granted in Regulations 94, article 23 (m)–16.[1] In 1938 and 1939, however, the petitioner in con-

---

[1] Regulations 94.

ART. 23 (m)–16. Charges to capital and to expense in the case of oil and gas wells.—(a) Items chargeable to capital or to expense at taxpayer's option :

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. Such expenditures have for convenience been termed intangible drilling and development costs. * * *

* * * * * * *

(d). This article does not grant a new option or election. Any taxpayer who made an election or elections under article 223 of Regulations 69 or under article 243 of Regulations 74 or under article 236 of Regulations 77 or under article 23 (m)–16 of Regulations 86 is, by such election or elections, bound with respect to all optional expenditures whether made before January 1, 1936, or after December 31, 1935, in connection with oil and gas wells. Any taxpayer who has never made expenditures for drilling oil or gas wells prior to the first taxable year beginning after December 31, 1935, must make an election as to intangible drilling and development costs in general in the return for the first taxable year in which the taxpayer makes such expenditures, and a taxpayer who has never made expenditures for a nonproductive well prior to the first taxable year beginning after December 31, 1935, must make an election as to the cost of such wells in the return for the first taxable year in which the taxpayer completes such a well. Any election so made is binding for all subsequent years. A taxpayer is considered to have made an election in accordance with the manner in which the respective types of optional items are treated (1) in his return for the first taxable year ending after December 31, 1924, in which optional expenditures of the respective types are or were made, or (2) in an amended return filed between June 18, 1927, and December 18, 1927, in accordance with Treasury Decision 4025. Any taxpayer who has made expenditures for optional drilling and development costs must attach to his return for the first taxable year beginning after December 31, 1935, and for each year thereafter a clear statement of his election under each of the options, together with a statement of the time at which, and the manner in which, such election was made.

junction with other coowners of the Puig Lease Operations, undertook to expense and deduct such costs in arriving at the proportionate share of profits or losses of the respective coowners. The 1938 and 1939 income tax returns were examined by respondent's agent and these deductions were disallowed. The petitioner contested this determination and argued that the Puig Lease Operations constituted a partnership and possessed the right to elect to deduct such intangible drilling and development costs. The controversy was settled in an informal compromise by which the intangible drilling and development costs of the Puig Lease Operations were allowed as deductions. The petitioner now contends that it acted erroneously in 1938 and that the intangible costs should be capitalized. The respondent urges that this contention constitutes an inconsistent position from that taken in the earlier controversy. The petitioner admits the inconsistency and the propriety of the adjustments claimed by respondent as to 1938 and 1939 if the petitioner's present position be sustained.

Petitioner makes two contentions, the first, and principal one, being that Puig Lease Operations was not a partnership or joint venture and therefore had no right to exercise an option in 1937, 1938, and 1939, and second, assuming it be held to be a partnership or joint venture under the statute, as such it was not a "taxpayer" and consequently had no right to an option under the regulations.

On the facts set out in our Findings of Fact we entertain no doubt as to the answer to the petitioner's first contention and accordingly hold that in the years in question the Puig Lease Operations was a joint venture or partnership within the broad definition of that term in section 3797, Internal Revenue Code.

Directing our attention to the second question, i. e., the right to an election, we find that Regulations 94, article 23 (m)–16 provided that "All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account." A further provision is that "Any election so made is binding for all subsequent years." It will be noted that this regulation grants the election to the taxpayer. Petitioner calls attention to the provision of section 181, Internal Revenue Code, that "Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity"; that consequently a partnership is not a taxpayer. From this it is argued that its action in 1937, 1938, and 1939 in deducting the intangible drilling costs as expense was without legislative sanction and that it was bound by the election exercised by it in 1936 to capitalize such expenses.

When the practical application of the statute is considered and the possible impact of petitioner's argument on the income-computing

responsibility of the partnership is appreciated, it appears clear that the regulations, construed as petitioner asks, would lead to results not contemplated by the Congress. Such is the case where two members of a partnership having equal investments and being entitled to equal shares in the profits have previously made opposing elections, one to charge such costs to expense, the other to capitalize them. How could such a partnership determine its capital account, the amount of its expenses, its income, and distributions, and what justification could be advanced for distributing to the partners the differing amounts that would result therefrom? The term "taxpayer" in the pertinent regulations had its genesis in the office of the Commissioner, not in the authorizing statute. If it be held to exclude a partnership from the election granted to other income-computing agencies, the regulation works an unnecessary hardship and is plainly unreasonable and unworkable. We are inclined to the view that the word "taxpayer" was used in the broad sense of any "person," as defined in section 3797, Internal Revenue Code, which term "shall be construed to mean and include an individual, a trust, estate, partnership, company or corporation." Any narrower interpretation would effectively so hamper the partnership in its computation of income as to make impossible a true and fair accounting to the partners and the Government. See article by Valentine Brookes, Esq., 5 Tax L. Rev. 35, 39.

The only direct reference we have found to the question in issue is in *H. H. Wegener*, 41 B. T. A. 857, affirmed 119 F. 2d 49, where this Court said: "It is true that the joint venture had a right to elect to treat 'intangible' development costs as ordinary and necessary expenditures in its income tax return, Regulations 86, art. 23 (m)–16, but it did not do this. Obviously it elected to capitalize the entire development cost, and we see no reason for treating it otherwise."

The organization of the joint venture known as the Puig Lease Operations brought into being a new entity, which, while not a taxpayer, had a very important role as an income-producing and computing agency. See *John G. Scherf, Jr.*, 20 T. C. 346, where we said "* * * in computing its net income under the revenue laws, it is generally the partnership, not the individual partner, that exercises the various options open to taxpayers in computing net income under the Code." The rationale on which this statement is based is applicable in solving our present difficulty.

We hold that the petitioner's contention is untenable with the consequence that respondent's action is affirmed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*