MAE E. TOWNEND, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51448. Filed October 22, 1956.

*Frank Townend, Esq.*, for the petitioner.
*Jules I. Whitman, Esq.*, for the respondent.

102

## OPINION.

RAUM, *Judge:* 1. Petitioner claims a net operating loss carryover to 1946 because of a loss sustained in 1945 in the sale of certain real property. Respondent has disallowed such deduction on the authority of section 122(d)(5) of the Internal Revenue Code of 1939.[1]

In order for petitioner to prevail she must prove that the foregoing loss was attributable to the operation of a trade or business regularly carried on by her. She contends, alternatively, that either she was in the business of selling real estate, or that the sale in 1945 was attributable to the operation of her trade or business of renting real property. Neither of these positions is supported by the record.

---

[1] SEC. 122. NET OPERATING LOSS DEDUCTION.

(d) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \* \*

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. \* \* \*

Petitioner was not in the trade or business of selling real property. Such sales, both as a member of the partnership and individually, were few in number and sporadic. They were casual and occasional, and do not establish a trade or business regularly carried on by petitioner. There is no evidence of frequency, regularity, or continuity of sales, advertising for sales, sales office, or other indicia normally associated with the business of selling real estate. Cf. *Charles Weill*, 17 T. C. 318.

Nor is the result changed by the greater number of sales made by the partnership in 1947, even assuming events in that year to be factually relevant. The principal purpose of such sales was to reduce a mortgage indebtedness. There was also a desire to "prune" unproductive assets. No part of the proceeds of such sales was used to acquire new properties, and amounts not used to reduce the indebtedness were distributed to the partners. Thus, although the partnership continued in business after such sales, its activities were permanently reduced in scope and magnitude to the extent to which it had disposed of a part of its assets. This does not evidence a selling business; to the contrary, it affirmatively shows that selling was not the regular course of business, for every sale resulted in a partial liquidation. The same is true of individual sales by petitioner. *Walter G. Morley*, 8 T. C. 904, cited by petitioner, is distinguishable on its facts. There the evidence did show the taxpayer to have been in the trade or business of selling real estate. In the instant proceeding it does not.

We agree that petitioner was in the trade or business of renting real estate during the period in question. We cannot find, however, that the sale by her in 1945 was attributable to the operation of that business. Cf. *Jay Burns*, 21 T. C. 857, 870–871, reversed on other issues 219 F. 2d 128 (C. A. 5).

Petitioner's reliance on *Helen Goble*, 23 T. C. 593, is misplaced. In that case a taxpayer engaged in farming had sold certain livestock and farm implements, which were no longer economically useful in her business. However, the evidence disclosed that such sales were made regularly and habitually, and that such property when sold was with equal regularity replaced with new property used for the same purpose as that disposed of. In the instant proceeding there is no such regularity of sales, and it affirmatively appears that property disposed of was not replaced. Petitioner never purchased real estate individually until 1953, and the partners never did. All sales, whether of partnership or individually owned property, represented permanent reductions in the assets of the rental business, and a partial liquidation thereof. The opinion in the *Goble* case explicitly distinguished situations involving total or partial liquidations. 23 T. C. at p. 598. Such transactions constitute sales of property used in the trade or business, but are not attributable to the *operation* of that trade or business.

*Joseph Sic*, 10 T. C. 1096, affirmed 117 F. 2d 469 (C. A. 8), certiorari denied 339 U. S. 913; *Lazier* v. *United States*, 170 F. 2d 521 (C. A. 8).

Accordingly, petitioner is not entitled to a deduction for a net operating loss carryover in 1946 as a result of the loss sustained by her during the year 1945.

2. In 1946 petitioner suffered a loss as the result of a sale of property held by her in her rental trade or business. In the same year the partnership of which she was a member enjoyed gains from two such sales. Both parties agree that all of the foregoing property is of the type described in section 117 (j) of the Internal Revenue Code of 1939.[2]

We have here a clear-cut question of law: Must petitioner aggregate her individual losses and share of partnership gains and apply 117 (j) once to the net result, or may she separately apply 117 (j) to each series of transactions, resulting in an ordinary loss deduction in respect of her individual loss, and at the same time a capital gain in respect of her share of partnership gains?

We have recently had occasion twice to deal with this problem. *Jacob (Jay) Paley*, 22 T. C. 1236; *Jack Jordan Ammann*, 22 T. C. 1106. We decided both cases in accordance with the contentions of the petitioner in the instant proceeding. In the *Ammann* case the gains were from individual and the losses from partnership transactions, but the essential question is the same. The *Paley* case was decided by us on the authority of the *Ammann* case.

Subsequently, our decision in *Jack Jordan Ammann* was reversed. *Commissioner* v. *Ammann*, 228 F. 2d 417 (C. A. 5). And still later our decision in *Jacob (Jay) Paley* suffered a similar fate. *Commissioner* v. *Paley*, 232 F. 2d 915 (C. A. 9), certiorari denied 352 U. S. 838. Both Courts of Appeals relied strongly on *Neuberger* v. *Commissioner*, 311 U. S. 83, where the taxpayer, a member of a partnership dealing in securities on the floor of the New York Stock Exchange, suffered losses in individual noncapital security transactions while his firm enjoyed gains in such transactions during the same taxable year. The Court permitted the taxpayer to reduce his partnership gains to the extent of his individual losses, saying at pages 85–86:

Nowhere does there appear any intention to deny to a taxpayer who chooses to execute part of his security transactions in partnership with another the right to deductions which plainly would be available to him if he had executed all of them singly. Nowhere is there any suggestion that Congress intended to

---

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

*       *       *       *       *       *       *

(2) GENERAL RULE.—If * * * the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *

tax noncapital security gains until they exceeded similar losses. The language of section 23 (r) (1) does not require such a construction. Nor do the available evidences of Congressional intent indicate such a purpose.

While the *Neuberger* case dealt with section 23 (r) of the Revenue Act of 1932 rather than section 117 (j) of the 1939 Code, it is difficult to see why a similar result should not be reached here, in the absence of any persuasive legislative history to the contrary.[3]

Having reviewed the foregoing reversals of our previous position, we have decided to follow the rule as set forth by the Courts of Appeals for the Fifth and Ninth Circuits. We therefore hold that petitioner may not separately treat her partnership share of gains and her individual losses so as to apply section 117 (j) of the Internal Revenue Code of 1939 two different times with respect to one taxable year. She must first aggregate all of such gains and losses, and must thereafter apply the provisions of that section to the net result.

3. We come now to the final issue to be decided, whether during the years 1913 to 1927 depreciation was "allowable" to the trust estate, so as to require an appropriate reduction in the basis of the assets held by it, and subsequently by the partnership. There is no issue as to the proper amount of depreciation if it should be held allowable in those years.

The ruling of the Commissioner, insofar as it denied such allowance to the beneficiaries, is not in point. The trust was the owner of the property in question, and in the absence of express statutory provision, that fact alone would necessarily preclude such deduction by the beneficiaries. The issue properly before us is whether during those years the deduction for depreciation was allowable to the *trustee*.

The regulations then in effect provided that such deduction was allowable to the trustee "where the terms of the will or trust * * * provide for keeping the corpus of the estate intact and where physical property * * * has suffered depreciation through its employment in business" if "the deduction is applied or held by the fiduciary for making good such depreciation." T. D. 2267, promulgated Nov. 5, 1915. Thus, the position of the Commissioner was to the effect that depreciation deductions were allowable to a trustee only if such trustee was required by the trust instrument to keep the corpus intact.

The problem was involved in *Pennsylvania Co. For Insurance, Etc., Trustee*, 10 B. T. A. 428, but the will was not in evidence, and it was

---

[3] Indeed, section 183 (b) of the 1939 Code appears to support rather than to detract from the applicability of the *Neuberger* case here. It provides that in computing the net income of a partnership the gains and losses from sales or exchanges of capital assets shall be segregated. See *John G. Scherf, Jr.*, 20 T. C. 346, 348–349. The obvious purpose of such segregation is to facilitate the blending of a partner's share of his firm's capital gains and losses with those realized by him in his individual capacity. And no conceivable reason appears why Congress would want different treatment in this respect for sales or exchanges governed by section 117 (j). See *Commissioner* v. *Paley*, 232 F. 2d at p. 918.

held that even assuming the validity of the foregoing regulations the taxpayer-trustee had failed to prove that it was not under a duty to conserve the principal of the estate. The opinion expressly avoided a decision as to such validity (p. 432), and at page 433 we find the following language:

The instrument creating the trust is not before us and we are unable to determine from the record the character of the limitations of the trust estate. Therefore, even if the regulations prior to the 1918 Act were valid, and we pass no opinion in regard thereto, the petitioner has failed to show that it was denied the right to depreciation deductions. * * *

However, in *Fidelity-Philadelphia Trust Co., Trustee*, 18 B. T. A. 43, affirmed 47 F. 2d 36 (C. A. 3), the foregoing regulations were held to be invalid insofar as they purported to deny the deduction in the case of a trustee not under a duty to conserve the estate. Accordingly, we need not pass upon the arguments presented as to whether the trustee in the instant proceeding was under a duty to conserve the corpus of the estate.

The deduction for depreciation was "allowable" notwithstanding the inability of the trustee to obtain a tax benefit therefrom merely because all income received by him was currently distributable. In this respect the trustee stands in no different a position from that of any taxpayer who has no net income or a net loss and is similarly unable to derive a benefit from the deduction for depreciation. *United States Trust Co. of New York*, 31 B. T. A. 54. Cf. *Virginian Hotel Corporation* v. *Helvering*, 319 U. S. 523.

Reviewed by the Court.

*Decision will be entered for the respondent.*

MURDOCK, *J.*, dissents on the second point.