ELIA P. MARINOS AND ALICE M. MESSER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marinos v. Commissioner
Docket No. 30774-86
United States Tax Court
T.C. Memo 1989-492; 1989 Tax Ct. Memo LEXIS 495; 58 T.C.M. (CCH) 97; T.C.M. (RIA) 89492; September 7, 1989
Henry P. Vanderkam, for the petitioners. Thomas N. Thompson, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1981 in the amount of $ 10,568.00; together with additions to tax for the same year pursuant to sections 6653(a)(1), [1]6653(a)(2), 6621(d)[2] and 6659 as follows: Additions to tax under
Internal Revenue Code Section
6653(a)(1)
6653(a)(2)
6621(d)
6659
$ 528.40
*
**
$ 3,170.00
*497 With the permission of the Court granted pursuant to respondent's Motion to Sever Statute of Limitations Issue for Trial, the statute of limitations issue presented here was severed from the underlying tax issues which arose from deductions and credits taken by petitioners with respect to their participation in a promotion involving Entertainment Marketing Company, Inc. ("EMC"). The sole issue for our consideration at this time is whether respondent issued the statutory notice of deficiency to petitioners prior to the expiration of the applicable statute of limitations. The facts relative to this issue were fully stipulated. [3] Petitioners timely filed a joint Federal income tax return for the calendar year 1981. Petitioners *498 resided in Seabrook, Texas, at the time the petition was filed in the case. Petitioner Elia P. Marinos ("Marinos") and Robert Brodie ("Brodie") agreed, by letter agreement dated June 25, 1981 (the "Agreement"), to lease a master audio record from EMC. Marinos promised to prepay the lease costs and also to contract with Signal Records, Ltd. ("Signal") for the production and distribution of the record. The Agreement stated that Brodie and Marinos were each to "own fifty percent (50%) as tenants in common," although Brodie was required to tender the balance of his 50 percent payment in order to be eligible for his 50 percent "participation." Finally, the Agreement also stated that "this agreement is not in any way to be considered a partnership." Petitioners' Joint U.S. Individual Income Tax Return for the calendar year 1981 was timely filed on or before April 15, 1982, with the office of the Internal Revenue Service at Austin, Texas. On Schedule C of their 1981 return, petitioners *499 claimed a deduction for a "loan payment amortization" in the amount of $ 355.94 which they attributed to "B/M Venture (1/2 interest); Joint Venture." Petitioners also claimed an investment tax credit in the amount of $ 10,420.00 on Form 3468 based on their share of the investment in the lease, production and distribution of a master audio record from EMC. On November 6, 1984, petitioners executed Form 872-A, Special Consent to Extend the Time to Assess Tax, for the period ended December 31, 1981 (the "Form 872-A"). The Form contained restrictive language agreed to by petitioners and the District Director of Internal Revenue. The restrictive language, found in paragraph 4 of the Form 872-A, served to extend the time period to assess a deficiency only as to partnership items, or items treated as partnership items by petitioners: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (A) The taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from, any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return), (B) The tax basis of the taxpayer's *500 interest(s) in such partnership(s) or organization(s) treated by the taxpayer as a partnership, (C) Any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment, or other disposition of taxpayer's interest in such partnership(s) or organization(s) treated by the taxpayer as a partnership, (D) items affected by continuing tax effects caused by adjustments to any prior tax return, and (E) any consequential changes to other items based on such adjustment, (F) this 872-A also covers any addition(s) to tax which may be appropriate as a result of the facts and circumstances surrounding any adjustment(s). Respondent's Notice of Deficiency in this case was mailed on April 29, 1986. The deficiency was based on respondent's determination, inter alia, that tax deductions and credits claimed by petitioners in connection with their lease arrangement with EMC had no economic purpose other than obtaining deductions for purported tax losses, tax credits, and non-deductible items. Related to this issue is whether petitioners are liable for the additions under sections 6653(a)(1), 6653(a)(2), 6621(d) and 6659. As noted above, the only issue before us at *501 this time is whether the statute of limitations bars the assessment and collection of the determined deficiency and additions. This in turn depends on whether the Notice of Deficiency was timely issued. OPINION Petitioners argue that assessment of tax is barred by the statute of limitations. Respondent contends that the Notice of Deficiency was issued within the period allowed for assessment, as extended by the Form 872-A Consent form executed by the parties. Arguing that the Form 872-A extended the statute of limitations only with respect to partnership items or items in connection with organizations treated as partnerships on petitioners' 1981 return, petitioners contend that the Marinos/Brodie venture was not a partnership and was not treated as such by petitioners on their return. From this, petitioners conclude that the loss from the Marinos/Brodie venture was not a partnership item within the meaning of the agreement of the parties as set forth in the Form 872-A. Consequently, in petitioners' view, respondent's Notice of Deficiency was untimely. In general, respondent must issue *502 a notice of deficiency in Federal income tax within three years after a taxpayer's return has been filed. Section 6501(a). The bar of the statute of limitations is an affirmative defense on which petitioner bears the burden of persuasion and the initial burden of going forward with the evidence. Adler v. Commissioner, 85 T.C. 535 (1985). Petitioners' joint Federal income tax return for the taxable year ended December 31, 1981, dated April 11, 1982, was deemed to have been filed April 15, 1982. Section 6501(b)(1). Respondent's Notice of Deficiency with respect to petitioners' 1981 return was mailed on April 29, 1986, more than three years after petitioners' 1981 return was deemed filed. This satisfies petitioners' initial burden of going forward. Petitioners, however, executed the Form 872-A on November 13, 1984, less than three years after petitioners' 1981 return was deemed filed. This consent extended the time during which respondent could assess income tax due with respect to partnership items on petitioners' 1981 return. This satisfies respondent's burden of *503 going forward. Adler v. Commissioner, supra.Therefore, petitioners must establish that the executed Form 872-A does not extend the statute of limitations with respect to the deficiency determined in this case. We agree with petitioners that the Form 872-A executed by the parties extends the period of the statute of limitations only for adjustments of partnership items or of items in connection with an organization treated by petitioners as a partnership on petitioners' 1981 return. Thus, if the Marinos/Brodie venture is a partnership then the Form 872-A will successfully operate to toll the period of the statute of limitations with respect to petitioners' claimed deductions and credits at issue in this case. A partnership for Federal tax purposes is defined by the Code in section 7701(a)(2) which provides: (2) PARTNERSHIP AND PARTNER -- The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the *504 meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. See also section 761. The definition of partnership in section 7701(a)(2) was added to the Code by section 1111(a) of the Revenue Act of 1932 and first appeared in section 3797(a)(2) of the 1939 Code. The Congressional Reports accompanying the Revenue Act of 1932 make it clear that Congress intended the definition of partnership for Federal tax purposes to include a number of arrangements, such as joint ventures, which were not partnerships under state law. H. Rept. No. 708, 72d Cong., 1st Sess. 53 (1932), 1939-1 C.B. (Part 2) 495; S. Rept. No. 665, 72d Cong., 1st Sess. 59 (1932), 1939-1 C.B. (Part 2) 538; Madison Gas and Electric Co. v. Commissioner, 633 F.2d 512, 515 (7th Cir. 1980), affg. 72 T.C. 521 (1979). The definition of partnership in section 7701(a)(2) is repeated verbatim in section 761(a), which permits certain qualifying organizations to elect to be excluded from the application of some or all of the special Subchapter K provisions. *505 Section 1.761-1, Income Tax Regs., which petitioner cites, expands upon the section 761 definition of partnership: Sec. 1.761-1. Terms defined. (a) Partnership. -- The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not a corporation or a trust or estate within the meaning of the Code. The term "partnership" is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. See section 7701(a)(2). See regulations under section 7701(a)(1), (2), and (3) for the description of those unincorporated organizations taxable as corporations or trusts. A joint undertaking merely to share expenses is not a partnership. For example, if two or more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute *506 a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if co-owners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. * * * [Emphasis added.] The arrangement between Marinos and Brodie is a joint venture carrying on a "business, financial operation, or venture" and therefore falls within the literal statutory definition of partnership. The arrangement is not taken out of this classification simply because Marinos and Brodie intended to be taxed only as a co-tenants and not as a partners. Madison Gas and Electric Co. v. Commissioner, supra.While it is well-settled that mere co-ownership of property does not create a tax partnership, see Estate of Appleby v. Commissioner, 41 B.T.A. 18 (1940), affd. 123 F.2d 700 (2d Cir. 1941), *507 co-owners may also be partners if they or their agents carry on the requisite degree of business activities. Bentex Oil Corp. v. Commissioner, 20 T.C. 565 (1953); Hahn v. Commissioner, 22 T.C. 212 (1954). See Cokes v. Commissioner, 91 T.C. 222 (1988), for a discussion of whether the owner of a working interest in a joint venture in real estate was a partner or was an individual for tax purposes. The regulations and relevant case law indicate the distinction between mere co-owners and co-owners who are engaged in a partnership lies in the degree of business activity of the co-owners or their agents. The degree of business activity exhibited by the Marinos/Brodie venture causes us to characterize that relationship as a partnership. Petitioners have not convinced us that such characterization is improper. The Agreement states that Marinos and Brodie agreed to lease a master audio record from EMC. Marinos also agreed to contract with Signal for production and distribution of the recording. Both Marinos and Brodie contributed capital to the venture. The claimed losses and credits associated with the Marinos/Brodie venture were shared *508 and allocated between Marinos and Brodie. Petitioners included Marinos' share of the losses and credits on their Federal income tax return. Petitioners also referred to the Marinos/Brodie venture as a "joint venture" on their 1981 Federal income tax return. They claimed an investment credit on the master recording indicating that they characterized the joint venture as a business activity. Both Marinos and Brodie agreed to pay one-half of the venture and they agreed to split any income 50-50. These facts lead us to conclude that for Federal income tax purposes the Marinos/Brodie venture was a partnership. Madison Gas and Electric Co. v. Commissioner, supra. Therefore, the adjustment to the claimed loss from the Marinos/Brodie venture was properly within the limited scope of the Form 872-A executed by the parties.[4] Consequently, respondent's Notice of Deficiency in this case was timely. *509 An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Amended and redesignated as sec. 6621(c)↩ by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1511(c)(1)(A)-(C), 100 Stat. 2744. *. 50% of the interest due on the underpayment. ↩
**. 120% of the interest due on the underpayment.↩
3. None of the background facts mentioned herein were stipulated or proven by evidence but were taken from undisputed facts recited in the pleadings to give a better understanding of the issue involved.↩
4. The investment credit issue was the principal issue in dispute when the extension was signed and we believe that both parties intended the statute of limitations to be kept open with respect to this issue. See Smith v. Commissioner, T.C. Memo. 1989-432↩.