ESTATE OF EDGAR S. APPLEBY, DECEASED, EDGAR T. APPLEBY AND FRANCIS S. APPLEBY, CO-EXECUTORS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOHN S. APPLEBY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93886, 94080. Promulgated January 5, 1940.

*John B. Coman, Esq.*, for the petitioner in Docket No. 93886.
*Banton Moore, Esq.*, for the petitioner in Docket No. 94080.
*Allen T. Akin, Esq.*, for the respondent.

## 20

OPINION.

STERNHAGEN : 1. The Commissioner held that the "operation of a garage by the [two brothers] should be classified as a partnership within the meaning of section 801 of the Revenue Act of 1934." [1]

The evidence shows that the garage was not operated by the taxpayers, and the postulate of the Commissioner's determination is not correct. They built it at the suggestion of two automobile dealers, for the purpose of leasing it to them, and the lessees operated it. Petitioners were merely the owners of the property, which was improved and rented primarily to defray the taxes.

The respondent argues that the petitioners, tenants in common of the property inherited from their father, and conceded to be not partners under New York law, were operating the property as a business enterprise and were therefore within the statutory category of partnership. He concedes that petitioners were not a syndicate or a pool; but says that they "constitute a group", that "by the decision to erect and operate the garage * * * they became engaged in a joint venture", and that "the all-inclusive 'other unincorporated organization'" is sufficiently broad to include them. The statutory term partnership, he says, "is all embracing of any business or financial operation carried on by two or more individuals other than as a trust, corporation or estate."

The ownership of real property by tenancy in common is an estate so old and well known that it is impossible to believe that it was intended to be included in the statutory catalog of partnerships by such a general term as "group", "joint venture", or "other organization." Never, so far as we are advised, has it been regarded taxable as a unit, although its existence has always been recognized. Cf. I. T. 1604, II-1 C. B. 1 (1923) ; I. T. 2082, III-2 C. B. 176 (1924). If it were now to be held a statutory partnership because of the close relations of the tenants and their common interest in property it would be difficult to

---

[1] SEC. 801. DEFINITIONS.

(a) When used in this Act—

    *       *       *       *       *       *       *

(3) The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation ; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

exclude from the statutory term other relations having similar attributes, such as marital communities or tenancies by the entirety, cf. *Poe* v. *Seaborn*, 282 U. S. 101; *Tyler* v. *United States*, 281 U. S. 497; *Champlin* v. *Commissioner*, 71 Fed. (2d) 23. This the Commissioner does not expressly suggest, and there should be some fairly clear authoritative support for such an important and far reaching innovation, even though on the other hand the statutory term is not to be narrowly or rigidly construed. Cf. *Morrissey* v. *Commissioner*, 296 U. S. 344; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462.

Although it will probably continue to be difficult to classify many of the imaginable varieties of businesses and interests in which more than one person share, there is aid in the report of the Senate Finance Committee proposing the 1932 statute.[2] This clearly indicates that the new statute was intended primarily to provide a more definite category for syndicates, and for organizations similar to them, to pools, and to joint ventures, the taxation of the income of which had been troublesome. This is not said as to the income derived by tenants in common from simple ownership. Whether it could be said as to income from the operation of a trade or business by an organized group of tenants in common is not to be decided until the question arises in such a case. Cf. I. T. 2749, XIII-1 C. B. 99 (1934).

The determination that the petitioners are members of a "partnership" under section 801 (a) (3) is reversed. They are not limited in their deductions for capital losses by the ordinary income received from other sources, cf. *Johnston* v. *Commissioner*, 86 Fed. (2d) 732; certiorari denied, 301 U. S. 683; *Winmill* v. *Commissioner*, 93 Fed. (2d) 494; reversed other point, 305 U. S. 79, but each may offset the income derived by him from property held by them in common by his individual capital losses.

---

[2] Some confusion has existed over the requirements of the prior acts as to the time and manner of returning income from the operations of joint ventures, syndicates, pools, and similar organizations. If the syndicate was not an association, partnership, or trust within the meaning of the act there was no express requirement in the act or regulations for the filing of a syndicate return, and the sole responsibility of making returns of the annual gains and losses of the syndicate was placed upon the several members. Quite frequently, however, the members of such a syndicate overlooked the necessity of their making returns each year of their shares in the annual gains and losses from syndicate operations and assumed that they were required only to make returns of their shares in the ultimate gain or loss from the entire syndicate operations in the year when the syndicate was wound up or liquidated. Moreover, a strict observance of the letter of the prior acts would have required each member to determine his annual share in the syndicate gains or losses upon the basis of his own accounting period and according to his own method of accounting, irrespective of the accounting period or method of accounting upon which the books or records of the syndicate were kept.

The bill does away with this uncertainty by placing all joint ventures, syndicates, pools, and similar organizations, which do not constitute associations or trusts, in the category of partnerships, and the members of such syndicates, pools, etc., in the category of partners. This provision will have the effect of requiring the syndicate to file a partnership return and will thus make it easier for the members to determine the distributive shares in the syndicate gains and losses which are to be included in their own returns.

2. The Commissioner determined that the basis of gain to the petitioners from the condemnation award on the garage property must exclude the $14,000 value in 1913 of the structures which were demolished in 1917 and must also exclude the $8,449 cost of the mezzanine in 1925. He now concedes that the $8,449 is properly to be included within the basis.

The property was inherited in 1913 and the old structures were then upon it. They remained there yielding an inadequate return until 1917, when they were demolished to give place to the new garage. The petitioners contend that the original basis continued to be part of the cost of the new structure, and the respondent says that the demolition in 1917 was the occasion for a deduction for loss at that time, with the resulting reduction of basis. The evidence shows that the demolition was necessary in order to construct the new building and that it was done for that purpose. The cost of demolition was therefore in fact one of the incidents of the cost of the new building, and had the petitioners taken deductions for losses in 1917 by reason of the voluntary destruction of the buildings, such deductions would have been disallowed and the basis of the property would have been carried on undiminished except by depreciation of the new structure. *Arthur H. Ingle*, 1 B. T. A. 595; *Robert B. Griffin*, 17 B. T. A. 255; *Liberty Baking Co.* v. *Heiner*, 37 Fed. (2d) 703; *Spinks Realty Co.* v. *Burnet*, 62 Fed. (2d) 860. In prior cases the purpose when the property was originally acquired to raze the existing structure was not the single controlling factor; the important question was whether the demolition of the old structure was part of the new project so that the cost of the demolished building was reasonably to be regarded as part of the investment in the new capital asset. The rationale of the prior decisions is no less applicable to property acquired by inheritance than to property purchased.

The basis therefore of the garage property should not be reduced by reason of the destruction of the old buildings in 1917.

3. The $67,573.95 which was added by the city to the original award because of the delay in payment is taxed by the Commissioner as interest, and the petitioners contend that it is part of the award and therefore within their capital gain. It is part of the award and not interest. *Seaside Improvement Co.* v. *Commissioner*, 105 Fed. (2d) 990; certiorari denied, 308 U. S. 618; cf. *Baltimore & Ohio Railroad Co.* v. *Commissioner*, 78 Fed. (2d) 460, 464; *Commissioner* v. *Meyer*, 104 Fed. (2d) 155.

4. Petitioner John S. Appleby would have the gain from the condemnation award reduced by a percentage regarded as allocable to severance or consequential damages applicable to the small part of the land which remained. The amount of the alleged severance damages is arrived at by a mathematical computation of a real estate

dealer who was familiar with the condemnation proceeding and purported to analyze the evidence in that proceeding and impute the result of his analysis to the award. It does not appear, however, that the award itself contained such a separation or any classification of its parts. It apparently was a lump sum. No division of it can be made on this record. Cf. *Marshall C. Allaben*, 35 B. T. A. 327.

5. The $150 which the Commissioner added as interest to John S. Appleby's income is shown without contradiction to have belonged to another and not to him. The determination taxing it to petitioner is reversed.

*Decision will be entered under Rule 50.*