Emmett J. McCarthy v. Commissioner.
McCarthy v. Commissioner
Docket No. 109882.
United States Tax Court
1943 Tax Ct. Memo LEXIS 293; 2 T.C.M. (CCH) 146; T.C.M. (RIA) 43245; May 22, 1943
*293 John D. Clancy, Jr., Esq., for the petitioner. Gerald W. Brooks, Esq., and Clifford P. Hicock, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent determined deficiencies in the petitioner's income tax for 1939 and 1940 in the respective amounts of $5,603.01 and $390.59. The issues presented by the pleadings are the correctness of the respondent's action (1) in not allowing a deduction of $20,260.14 in 1939 as a loss sustained on the voluntary demolition of a building on certain bank property; (2) in not allowing as deductions in 1939 the amount of $1,281.98 representing 1936 taxes with interest thereon on said bank property and the amount of $2,325.90 representing 1937 and 1938 taxes with interest thereon on the property; (3) in not allowing as deductions in 1939 the amount of $4,553.28 representing interest paid on the taxes on the property for the years 1928 through 1936 and the amount of $201.76 as interest paid on a special assessment made against the property in 1928; (4) in allowing for 1939 a deduction of $6,068.28 as a long-term loss sustained on the liquidation of a corporation; (5) in not allowing as deductions the amount of $1,596.68 for *294 1939 and the amount of $487.12 for 1940 expended in the acquisition of a long-term lease on the real property heretofore mentioned; (6) in not allowing a deduction for 1939 of $55 for charitable contributions; (7) in not allowing for 1939 a deduction of $695 for bad debts; (8) in not allowing a deduction for 1939 of $625 for litigation costs; (9) in not allowing a deduction for 1940 of $200 for cost of bonds in connection with the above-mentioned property; and (10) in not allowing a deduction of $200 for each of the years 1939 and 1940 as automobile expenses. Since no evidence was submitted with respect to Issues Nos. (5) through (10) and no mention of them was made by petitioner, either at the hearing or on brief, we assume that they have been abandoned, thus leaving for determination only Issues Nos. (1) through (4). The proceeding was submitted upon a stipulation of facts and the facts are found as stipulated. [The Facts] The petitioner is a resident of Chicago, Illinois, and filed his income tax return for 1939 and 1940 with the Collector of Internal Revenue in that city. During or about 1927 a two-story brick, stone and wood building with basement was erected on the *295 premises known as 3150 West 63rd Street, Chicago, for use as a bank. The bank which occupied the premises was closed by state officials in 1931, and the building thereafter remained vacant. On or about December 26, 1935, the petitioner received a quitclaim deed to the premises at 3150 West 63rd Street, Chicago, sometimes hereafter referred to as the bank property, paying $1,000 as a consideration therefor. The grantor of the deed was the receiver for the Bain banks, and the grantee of the deed was John A. Maloney, nominee of the petitioner. On December 26, 1935, the expected useful life of the building on the property was 25 years from that date. Bonds of a face value of $150,000, secured by a mortgage on the bank property, had been issued and were outstanding. The trustee for the bondholders instituted foreclosure proceedings and on July 9, 1936 the property was sold at a master's sale. At or about this time the petitioner held $88,000 face value of the outstanding bonds which with $200 face value of the bonds subsequently acquired before the end of 1938 were acquired at a cost of $14,408.01. At the master's sale the property was sold subject to unpaid real estate taxes and the *296 interest thereon. Vincent P. Reilly, a nominee of the petitioner, bid in the property for $19,000 and received the master's certificate of sale. On October 9, 1936, the petitioner paid the master a total of $11,153.86 to apply on the sale computed as follows: Master's fees
$ 384.50
Attorney's fees
5,926.65
Payment to non-depositors
5,206.21
Costs
72.50
$11,589.86
Less: Credit allowed
436.00
$11,153.86 Additional payments were made by petitioner in connection with the title to the property as follows: Year
1936
Trustee's fees
$ 300.00
To clear an escrow ac-
count
1,120.00
1937
1938
Title and legal
454.55
$1,874.55
On January 28, 1937, John A. Maloney, acting for the petitioner, redeemed the property from the foreclosure sale. On August 26, 1937, the petitioner caused the 3150 West 63rd Street Building Corporation, sometimes hereinafter referred to as the Building Corporation, to be incorporated under the laws of Illinois, with an authorized capital of 500 shares of no par value common stock, and for the stated purpose of owning, operating, maintaining, leasing, mortgaging, selling and improving real estate in the City of Chicago. On September *297 14, 1937, Maloney conveyed the bank property, by quitclaim deed, to the corporation. The original subscribers to the capital stock of the corporation were John A. Maloney, 245 shares; Howard R. Brintlinger, 245 shares; C. J. Kennedy, 10 shares; and the recited consideration for the shares was property valued at $50,000. Maloney, Reilly, Brintlinger and Kennedy all were mere nominees of petitioner and none of them ever advanced any money for the property. While annual corporate reports were filed by the Building Corporation with the Secretary of State of the State of Illinois for the years 1937 and 1938, no stock was ever issued, no books of account were ever opened, and no Federal income tax returns were ever filed. The only corporate meeting of record is one held on February 27, 1939, when a resolution was adopted authorizing the conveyance of the bank property to the petitioner. On December 23, 1937, the petitioner paid $668.71 for plumbing work done on the building part of the bank property. So far as disclosed, the only function of the Building Corporation was to hold bare legal title to the bank property from September 14, 1937, to February 27, 1939, when it was conveyed to *298 the petitioner by quitclaim deed. The petitioner apparently had some thought that he would establish a bank or would procure a bank as a tenant but "Some time between September 14, 1937 and February 27, 1939 * * * ascertained that he would be unable" to do so. He further "ascertained that the premises could be leased to the F. W. Woolworth Company, providing that the building was destroyed and a new building constructed in accordance with plans submitted" by that company. Under date of April 17, 1939, however, the petitioner executed a lease on the property to Woolworth for a term of 239 months, effective June 1, 1939. The lease was of the existing building and contained no requirement for its destruction or the construction of a new building but did require that the existing building be remodeled, altered, enlarged and repaired in accordance with certain stated plans and specifications. The lease also provided that in the event petitioner should be unable to deliver the completed premises on June 1, 1939, Woolworth would accept the same upon completion at any time thereafter up to October 1, 1939, upon 30 days' advance written notice, the rent to commence as of the date of delivery *299 of possession. Notwithstanding the above-mentioned provision of the lease indicating that use by Woolworth of the existing building was contemplated, the petitioner thereafter completely demolished the old building and constructed a new building, which was completed in the fall of 1939, at a cost of $52,153.43 less salvage on the former building of $44, or a net cost of $52,109.43. The estimated useful life of the new building was 40 years from October 1, 1939. On April 1, 1935, the Cook County Assessor placed a value on the bank property of $46,817 and allocated $23,445 to the land and $23,372 to the building. A complaint was filed with the County Board of Appeals, which reduced the value on the building to $11,337, because of lack of utility due to the building not having been occupied since 1931. During the remainder of the quadrennial assessment period, namely, April 1, 1936, 1937 and 1938, the value of the land remained at $23,445 and the building at $11,337. On April 1, 1939, the County Assessor placed a value on the land of $30,885 and no value on the building. This was also true for April 1, 1940, although the new building had been completed in the fall of 1940. On September *300 1, 1939, the petitioner paid Cook County real estate taxes; charges and interest thereon as follows for the years indicated: Year
Taxes
Charges
Interest
1928
through
$10,822.86
$10.00
$4,850.44
1935
1936
1,092.15
1.50
255.36
Total
$11,915.01
$11.50
$5,105.80
1937
$ 1,000.91
$ 1.50
$ 133.62
1938
1,173.76
17.61
On September 12, 1939, the petitioner paid a special assessment tax of $249.61, assessed against the bank property in 1928, together with interest thereon in the amount of $201.76. In his income tax return for 1939 the petitioner deducted $18,620.14 as a loss sustained on the demolition in that year of the building part of the bank property. He arrived at the amount deducted by a computation as follows: 12/26/35
Receiver's quitclaim deed
$ 1,000.00
10/ 9/36
Paid Master to apply on sale
11,153.86
1936-7-8
Additional payments in connection with title
1,874.55
1936-7-8
Paid for bonds
$14,408.01
Less - quitclaim deed
1,000.00
13,408.01
12/23/27
Plumbing work to avoid damages, etc.
668.71
9/ 1/39
Taxes paid 1928 through 1936
11,915.01
Total cost of property
40,020.14
Less - land, appraised at 7/9/36
20,000.00
Cost of building
$20,020.14
Less - party wall remaining
1,400.00
Demolition loss
$18,620.14
The parties have agreed that petitioner derived no salvage from the party wall
and that the amount of $1,400 therefor used in the computation should be ignored.
*301 In determining the deficiency the respondent disallowed the deduction of $18,620.14 on the ground that the petitioner acquired the bank property from the Building Corporation in February 1939 and had failed to prove any basis for computing a loss on the building. While in making his determination the respondent held that the petitioner acquired the bank property on February 27, 1939, through liquidation of the Building Corporation, he now, on brief, agrees with the petitioner, and we think correctly so, that the petitioner became the owner of the property on December 26, 1935, and continued as its owner from that date. The fact that legal title to the property stood in the name of the corporation rather than petitioner until February 27, 1939, is of no significance. [Opinion] The principal question is whether the petitioner, by reason of the demolition of the building on the property at 3150 West 63rd Street, is entitled to a deduction as a loss of such portion of the cost of the entire property as may properly be allocated as the cost of the building. The statute, section 23(e)(2) of the Internal Revenue Code, allows a deduction of losses sustained during the taxable year *302 if incurred in any transaction entered into for profit, and the petitioner contends that section 19.23(e)-2 of Regulations 103 [1] promulgated thereunder authorizes the deduction claimed. The petitioner has proceeded on the theory that unless it was his intention at the time the above property was acquired not to use the building but to demolish it, the deduction for the year of demolition is allowable under the above-cited regulation as a matter *303 of course. To support this theory of the statute and the regulation, he relies on Union Bed & Spring Co. v. Commissioner, 39 Fed. (2d) 383; The Winter Garden, Inc., 10 B.T.A. 71; The Parma Co., 18 B.T.A. 429; and Louis Pizitz Dry Goods Co., 22 B.T.A. 161. The important thing is that a loss must have been sustained and the regulation merely gives as an instance where no loss was sustained the case where a taxpayer by reason of his intention at the time of purchase not to use the building but to demolish it, and has indicated that as to him no part of the outlay may be regarded as cost of the building demolished. In Commissioner v. Appleby, 123 Fed. (2d) 700, affirming 41 B.T.A. 18, it was said: * * * It would be unreasonable to hold that the statement of a rule for this single instance excludes application of a similar rule to cases where the intent to raze and rebuild was formed after the property was acquired. Losses are recognized only when they result from a closed transaction. If a building is *304 demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as a part of the cost of the new asset and to be depreciated during its life * * *. The building in the instant case had been constructed for use as a bank and the petitioner, when he acquired the property, apparently had some thought of procuring a bank as a tenant, for it is stipulated that "Some time between September 14, 1937 and February 27, 1939" he had "ascertained that he would be unable to establish a bank in said property." It is further stipulated that at or about the same time petitioner had also "ascertained that the premises could be leased to the F. W. Woolworth Company, providing that the building was destroyed and a new building constructed in accordance with the plans submitted by the said F. W. Woolworth Company." On these facts, the petitioner argues in substance that the building was susceptible of use only *305 as a bank and since a bank could not be "established" in the property the said building was unsuitable for further use and Commissioner v. Appleby, supra, is not in point. It further appears, from the stipulation, however, that the lease executed on April 17, 1939, by the petitioner and Woolworth did not call for the destruction of the old building and the construction of a new one, but, to the contrary, called for the remodeling and use of the existing structure. The lease did require as a condition of acceptance by Woolworth that the building meet its specifications and with certain exceptions be similar in construction and design to a store occupied by the company at another address. The record is wholly silent as to whether or not tenants other than Woolworth or a bank were available and whether the building was usable by such tenants, if any. It is true that in preparing for the Woolworth occupancy the old building was not remodeled but was destroyed and a new building constructed in its place, but we are not advised whether the petitioner found that the old building could not be remodeled to meet the requirements of Woolworth or whether he merely *306 concluded that a new building was desirable for the purposes sought, even at the expense of the old building. We are unable therefore to say, as the petitioner desires us to do, that the unrecovered cost of the old building at the time of its demolition did not properly represent a part of the cost of the new structure, as in Commissioner v. Appleby, supra, or cost of the Woolworth lease, as in Young v. Commissioner, 59 Fed. (2d) 691. Prior to the making of the lease with Woolworth, the petitioner was the owner of a building having an expected useful life of 25 years from December 26, 1935, which, according to the stipulation of the parties, may be regarded as having a cost to him of at least one-half of his outlay on the entire premises incurred and paid prior to February 27, 1939. Meeting the requirements of Woolworth as he did, the petitioner upon completion of the new structure had a tenant under lease for 239 months, approximately 20 years, plus a new building, at a cost to him of his old structure plus a net cash outlay in erecting the new building of $52,153.43. Such being the facts of record, it does not appear *307 that any loss was sustained by the petitioner in the taxable year through demolition of the old building. Commissioner v. Appleby, supra;Young v. Commissioner, supra;Spinks Realty Co. v. Burnet, 62 Fed. (2d) 860; and Anahma Realty Corporation v. Commissioner, 42 Fed. (2d) 128. With respect to the taxes on the said property with interest thereon paid during the taxable years, the deductions claimed are allowed to the extent of the taxes with interest for the years 1936 and thereafter. For the years prior to 1936 the said taxes with interest, including the interest on the 1928 special assessment, are not as to the petitioner taxes and interest but constitute a part of the cost of the property, and the respondent's denial of deduction therefor is sustained. In determining the deficiency for 1939, the respondent allowed a deduction of $6,068.28 as a long-term loss sustained by the petitioner from liquidation of the Building Corporation. In an amended answer, he alleged that in the event we should find that the petitioner did not acquire ownership of the bank property *308 from the corporation, we should conclude that he erred in allowing deduction of the said amount as a long-term loss. The petitioner in his reply concedes that in the event of such a bolding the deduction should be disallowed. In view of our conclusion that the petitioner, and not the corporation, was the owner of the property, the allowance of the said deduction by the respondent in his determination of the deficiency will be reversed in recomputing the 1939 deficiency herein. Decision will be entered under Rule 50. Footnotes
1. Sec. 19.23 (e)-2. Voluntary removal of buildings. - Loss due to the voluntary removal or demolition of old buildings, scrapping of old machinery, equipment, etc., incident to renewals and replacements is deductible from gross income. When a taxpayer buys real estate upon which is located a building, which he proceeds to raze with a view to erecting thereon another building, it will be considered that the taxpayer has sustained no deductible loss by reason of the demolition of the old building, and no deductible expense on account of the cost of such removal, the value of the real estate, exclusive of old improvements, being presumably equal to the purchase price of the land and building plus the cost of removing the useless building.↩