Charles E. Tibbals and Lillian Tibbals v. Commissioner.
Tibbals v. Commissioner
Docket No. 63527.
United States Tax Court
T.C. Memo 1958-44; 1958 Tax Ct. Memo LEXIS 187; 17 T.C.M. (CCH) 228; T.C.M. (RIA) 58044; March 19, 1958
*187 Daniel A. Taylor, Esq., 135 South La Salle Street, Chicago, Ill., and Howard H. Baker, Jr., Esq., for the petitioners. David M. Robinson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax of petitioners as follows: Section 294(d)(2)
Year
Deficiency
Additions to Tax
1951
$ 175.14
1952
29,663.56
$3,169.91
1953
81,731.54
4,982.97
The issues are: (1) Whether the activities of Charles Tibbals and his brother, Todd Tibbals, in purchasing, holding, and selling certain real property constituted a joint venture. (2) Whether the gain realized on the sale of such real estate is taxable as ordinary income or as capital gains. (3) Whether the respondent erred in determining that the joint venture was on a fiscal year basis. (4) Whether the respondent erred in determining that petitioners were not entitled to use the installment method in reporting the gain from the sale of such real property. Other adjustments made by the respondent are not contested. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners are husband and *188 wife residing in Oneida, Tennessee. They filed joint returns for the calendar years involved with the collector or district director of internal revenue at Nashville, Tennessee. The returns reported the joint income of petitioners on the cash receipts and disbursements method using the installment method in reporting the gains from the sale of certain real estate here in question. Since Lillian Tibbals is involved because of the filing of joint returns, Charles E. Tibbals will be hereinafter referred to as petitioner. Petitioner is by profession a mining engineer. In 1946 petitioner and his brother, Todd Tibbals, purchased a business and organized a corporation known as Tibbals Flooring Company, located in Oneida, Tennessee, in which each owned a one-half interest. The business was acquired to engage in the manufacture of prefabricated houses or panels for the construction of prefabricated houses. The business has since been converted to the manufacture of hardwood flooring and lumber products. Since 1946 petitioner has continued to reside in Oneida, Tennessee, devoting his entire time to the management of Tibbals Flooring Company and the direction of two affiliated small companies *189 in which Todd Tibbals has no interest. Todd Tibbals has been a practicing architect since 1935 and is a partner in the architectural firm of Tibbals, Crumley, and Musson of Columbus, Ohio. Todd and his wife filed joint income tax returns for the years 1951, 1952, and 1953, on a fiscal year basis ended June 30. Todd also reported the gains from the sale of the 333 1/2 lots on the installment basis. In March 1950, petitioner and Todd jointly purchased from the Arlington Ridge Realty Company, an Ohio corporation of Columbus, Ohio, unimproved real estate, described as 357 lots located in what was then known as the River Ridge Addition of the Arlington Ridge Company's River Ridge Subdivisions in Franklin County, Ohio. Each acquired a one-half undivided interest, and each paid one-half the purchase price. Pursuant to an option granted to Todd in February 1951, petitioner and Todd jointly purchased 79 additional lots located in the aforesaid River Ridge Addition. Each acquired a one-half interest in said lots and each paid one-half the purchase price. By agreement of petitioner and Todd, the title to said lots was taken and held until sold in the name of Todd. In the fall of 1951, *190 petitioner and Todd executed written agreements dated March 1, 1950, and February 28, 1951, with respect to the real property in question. The agreement dated March 1, 1950, reads as follows: "THIS AGREEMENT made and entered into this first day of March, 1950, by and between the undersigned Todd Tibbals, hereinafter designated 'TODD' and Charles E. Tibbals, hereinafter designated 'CHARLES' WITNESSETH: "For and in consideration of the mutual covenants hereinafter contained, the parties agree that they shall jointly endeavor to purchase from the Arlington Ridge Realty Co. approximately three hundred fifty-seven (357) lots in River Ridge Addition, Franklin County, Ohio, for the sum of $20,000.00 upon the following terms and conditions: "1. That because Charles lives in Tennessee and is not readily available for signing documents or handling details in connection with the ownership of real estate, it is agreed that title to the real estate in question shall be taken in the name of Todd Tibbals. "2. That the note and mortgage given for a portion of the purchase price shall be executed by Todd Tibbals and Helen A. Tibbals, his wife, but that Charles shall reimburse Todd, upon request, *191 up to Fifty (50%) per cent of any and all payments by Todd on said note and mortgage. "3. That Charles further shall reimburse Todd for one-half of any and all taxes paid by Todd on any of said lots, and one-half of any expenses incurred and paid by Todd in connection with the ownership and sale of said lots. "4. That Todd may sell all or any part of said lots at not less than $700.00 per lot, if sold prior to three years from date hereof, and not less than $800.00 per lot, if sold at a time later than three years from date hereof; that said sale may be upon terms and conditions agreeable to Todd, and that he may give an option or options for the purchase of all or part of said lots for a period or periods not to exceed one year from the date of the option. "5. That Todd may apply to the County and Municipal officials for the improvement of said real estate by the construction of sewers, streets, curbs, gutters and installation of water lines and other utilities, provided the major cost thereof is assessed against the lots over a period of not less than ten years. "6. That in the event all or a part of said lots are sold, the proceeds from such sale, after payment of all expenses, *192 shall be divided on an equal basis and that the half due Charles shall be paid to him after deducting any funds then due by Charles to Todd. "IN WITNESS WHEREOF the parties have hereunto set their hands the day and year first above mentioned. "(Sgd.) Todd Tibbals, (Sgd.) Charles E. Tibbals" The agreement dated February 28, 1951, was substantially similar in effect. It contained an additional provision as follows: "6. That Charles may request Todd at any time to convey to Charles an undivided one-half interest in and to the original group of lots purchased under the March 1, 1950 Agreement and the lots purchased by authority of this Agreement, excepting any lots previously sold by Todd." Todd took no action in connection with the real estate in question without consulting with petitioner. Petitioner never invested in, or bought or sold any other real estate of any kind except the property occupied as a residence, and one small rental property which he has held for some time and from which he collected rental. In 1944, Todd acquired other lots not here involved upon which he constructed houses which he sold. In 1946, he organized the ColumbusSouthern Development Company *193 which built single houses. That corporation was controlled by Todd. Subsequent to 1946, Todd did not purchase or sell any lots individually. He controlled or was interested in a number of corporations which built houses for sale and which built rental housing under F.H.A loans. None of the corporations bought and sold lots. Except for the real estate in question, Todd never bought lots for investments. Todd was not a licensed broker. In the fall of 1950, some lot owners in the River Ridge Subdivision which contained some 1,200 lots, petitioned the county authorities for the improvement by the construction of sewers, streets, curbs, and gutters, etc. Todd signed such petition. In the fall of 1951, the county started to put in such improvements. In April 1951, two lots were sold for $1,600 to Cozy Cottages, Inc., an Ohio corporation, the stock of which was owned by Todd. Two prefabricated houses were built thereon for experimental purposes. In June 1952, 100 lots were sold for $79,200 to Arlington Ridge Development Company, an Ohio corporation, all of the stock of which was owned by Todd. In October 1952, 333 1/2 lots were sold to Lewis Leader acting on behalf of himself and *194 for Interstate Land, Inc., a Louisiana corporation of New Orleans, Louisiana, for $266,400. $75,000 of the purchase price was paid in October 1952, and the balance was evidenced by a promissory note dated November 13, 1952, secured by a mortgage on the aforesaid lots. Payments were made in 1953 as follows: January 1, $5,000; July 21, $10,000; September 17, $7,500, and on December 3, $9,000. The balance was paid during 1954. All the sales of the lots involved were effected without activity on the part of the joint owners. The property was not listed with real estate agents, nor was it advertised for sale. No "for sales" signs were erected. At the time of sale of the 333 1/2 lots, individual lots were selling at prices ranging from $1,000 to $1,500. In their joint return for 1952, petitioners computed the total realized gain from the sale of the real estate in question as follows: No. of
Gross sales
Year sold
lots sold
price
Cost
Gain
April 1951
2
$ 1,600
$ 151.43
$ 1,448.57
June 1952
100
79,200
7,495.48
71,704.52
Oct. 1952
333 1/2
266,400
25,212.06
241,187.94 Petitioners treated their one-half of the total gain as long-term capital *195 gain taxable at the rate of 50 per cent. The gain on the sale of the 333 1/2 lots was reported as an installment sale. In the deficiency notice the respondent computed the entire gain of the transactions as follows: No. of
Gross sales
lots sold
price
Cost
Gain
2
$ 1,600
$ 151.66
$ 1,448.34
100
79,200
582.97 [1]
71,617.03
333 1/2
266,800
25,289.20 *
241,510.60
In the deficiency notice the respondent determined Charles and Todd were engaged in a joint venture having a fiscal year ended June 30, and denied the use of the installment method. He computed the income of the venture as follows: Ordinary
Distributive
Deductions
net income
shares of
Year
Gross income
(taxes)
or loss
each member
1951
$ 1,448.34
$2,276.80
$ - 828.46
$ - 414.23
1952
71,617.03
0.00
71,617.03
35,808.51
1953
241,510.80
9,314.41
232,196.39
116,098.19
In determining the deficiencies the respondent adjusted the net income reported by petitioners by the distributive share of *196 the income or loss of the venture as shown in the aforesaid computation. No separate books of account were kept for the real estate transactions and no partnership returns were filed for any of the taxable years in question. Petitioner and his brother, Todd, purchased and held the real estate lots here involved as co-owners. The petitioner did not hold real estate in question for use in his trade or business, or primarily for sale to customers in the ordinary course of his trade or business. The property was held for a period of more than six months. Opinion LEMIRE, Judge: The respondent determined that petitioner and his brother, Todd, in purchasing and selling certain real property, were engaged in a joint venture, and computed the income of the venture on that basis. Since the solution of certain issues raised depends upon whether or not a joint venture in fact existed, the correctness of that determination will first be resolved. By virtue of section 3797(a)(2) of the Internal Revenue Code of 1939, a joint venture is governed by the rules applicable to a partnership. The primary *197 distinction between a joint venture and a partnership is that the former is an association to carry out a single project. Tompkins v. Commissioner, 97 Fed. (2d) 396. The principles adopted by the courts for determining whether a partnership exists for tax purposes are equally applicable in ascertaining the existence of a joint venture. The question whether the parties really and truly intended to join together to carry on a business as partners depends upon their intention. Their intention is a question of fact, to be determined from testimony disclosed by their "agreement" considered as a whole and by their conduct in execution of its provision. Commissioner v. Culbertson, 337 U.S. 733. Petitioner, his brother, Todd, and their attorney who handled the legal details, all testified that the unimproved real estate here involved was acquired for investment purposes; that the parties never intended to enter into a partnership and did not execute a partnership agreement. This testimony is uncontradicted. The respondent in support of his position that the parties were engaged in a joint venture, relies primarily on the agreement of March 1, 1950, set forth *198 in our Findings of Fact. The testimony shows that such agreement was entered into sometime subsequent to March 1, 1950, and was intended to reflect the oral agreement of the parties made at the time of the acquisition of the real property. We do not think that that agreement is inconsistent with the testimony of the parties as to their intention to acquire and hold real property as co-owners. Upon considering the oral testimony, the agreement of the parties, and their conduct in respect to the real estate lots, we are satisfied that petitioner has shown that he and Todd did not intend to engage in a joint venture. It is well settled that the mere holding of property as co-owners does not make them partners for tax purposes. Lena Hahn, 22 T.C. 212, appeal dismissed, 216 Fed. (2d) 954; Estate of Edgar S. Appleby, Deceased, 41 B.T.A. 18; Coffin v. United States, 120 Fed. Supp. 9. We, therefore, conclude that the respondent erred in determining that petitioner and Todd in purchasing and selling the real estate lots were engaged in a *199 joint venture. So holding, the issues as to whether the joint venture was on a fiscal year basis, and as to the use of the installment method in determining the gain from the sale of certain lots, are rendered moot. We next consider the question whether the gain realized from the sale of the real estate lots is taxable as ordinary income or is subject to long-term capital gains treatment as the proceeds from the sale of capital assets. Whether property is primarily held for sale to customers in the ordinary course of a trade or business, or for investment is a question of fact. Friend v. Commissioner, 198 Fed. (2d) 285; Harriss, Adm. v. Commissioner, 143 F. (2d) 279. The burden of proof is upon the taxpayer. New Colonial Ice Co., Inc. v. Helvering, 292 U.S. 435. There is no definite rule of thumb for the determination of whether property is held for sale to customers. In Stockton Harbor Industrial Co. v. Commissioner, 216 Fed. (2d) 638, certiorari denied 349 U.S. 904, it is said: "* * * Courts have sought to evolve *200 criteria by which to determine whether a person or an association was engaged in business. More particularly, they have tried to establish criteria by which to determine whether real property is held for investment or sale to customers in the ordinary course of business. Many tests have been proposed by this and other courts. Among them are: (1) the nature of the acquisition of the property, (2) frequency and continuity of sales over a period of time, (3) the nature and extent of the taxpayer's business, (4) the activity of the seller about the property, such as the extent of his improvements or his activity in promoting sales, (5) the extent and substantiality of the transactions and the like." [citing many cases] The record discloses that the real estate in question was platted sometime in the early twenties. At the time of its acquisition it was a "big briar patch, trees, brambles, and weeds all over the place." No improvements were erected by the brothers, but sometime subsequent to the purchase, the county installed roads, sewers, curbs, and water lines. Only three sales were made. There was no listing, advertising, or efforts to sell. The record shows that at the time of *201 the sale of the large block of 333 1/2 lots, single lots were selling at prices ranging from $1,000 to $1,500. Absence of motive to make a greater profit is an element indicating that the property was not held primarily for sale to customers in the ordinary course of a trade or business. See, Ross v. Commissioner, 227 Fed. (2d) 265. Considering all the facts and circumstances revealed by this record, we are persuaded that petitioner has carried the burden of showing that the real estate lots in question were not held primarily for sale to customers in the ordinary course of his trade or business. In selling such real estate, petitioner was merely liquidating a capital asset held for more than six months. Petitioner properly reported his share of the realized gain as long-term capital gain taxable at the rate of 50 per cent. It has been stipulated in the event it is held that petitioner was not engaged in a joint venture, that he effectively elected to use the installment method of reporting the realized gain from the sale of the block of 333 1/2 lots. The stipulated facts show that petitioner reported in the year 1952, the gain realized from the sale of 2 lots in *202 April 1951. Petitioner was on the cash basis. The record does not show in which year the proceeds from such sale were received. We, therefore, assume the proceeds were received in 1951, at the time of sale. Proper adjustment for the taxable year 1951 will be made in the recomputation under Rule 50. The respondent determined additions to the tax pursuant to section 294(d)(2), Internal Revenue Code of 1939, for understatement of tax for the taxable years 1952 and 1953. Petitioners do not contest the additions to the tax to the extent of their applicability determined in accordance with the issues as herein provided. To that extent, the additions to the tax, if any, are allowed. Decision will be entered under Rule 50. Footnotes
1. So in original. Probably should be $7,582.97.↩
*. Stipulation shows cost to be $25,289.40, or 20 cents in excess of documentary proof. ↩