GEORGE N. GABRIEL AND KAREN B. GABRIEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gabriel v. Commissioner
Docket No. 28619-90
United States Tax Court
T.C. Memo 1993-524; 1993 Tax Ct. Memo LEXIS 538; 66 T.C.M. (CCH) 1283; November 16, 1993, Filed *538 Decision will be entered under Rule 155. For petitioners: Kevin P. O'Connell. For respondent: Catherine J. Caballero. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency Sec. 6653(a)(1)
Sec. 6653(a)(2)
1981
$ 73,501.32
-- -- Additions to Tax Year
Deficiency Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$  7,067.52
--  --
--
1984
47,663.26
$ 2,383.15
50 percent of
$ 11,915.75
the interest due
on $ 47,663.26
After concessions and a stipulation of partial settlement, the sole issue for decision is whether the Form 872A (Special Consent to Extend the Time to Assess Tax) for the period ended December 31, 1981, executed by petitioners, extended the time during which respondent could assess income tax due with respect to losses that petitioners claimed were sustained from forward contracts in Government-backed securities. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule *539 references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners [1] resided in the State of Oregon when they filed their petition. During the years 1980 through 1984, petitioner participated in a program that purported to engage in forward contracts in Government-backed securities. This program was promoted by Gregory Government Securities (GGS) and Gregory Investment & Management, Inc. (GIM). On their 1981 Federal income tax return, petitioners claimed ordinary losses in the amount of $ 112,122 and short-term capital losses in the amount of $ 3,032 attributable to their participation in the program promoted by GGS and GIM. The parties have stipulated that the forward contracts, which petitioners purportedly participated in, are indistinguishable from the *540 forward contracts that were the subject of Brown v. Commissioner, 85 T.C. 968 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). In Brown, this Court concluded that the losses from the forward contracts were "not allowable because the disputed transactions constituted factual shams which were inspired, designed, and executed * * * for the sole purpose of attempting to achieve tax losses for their investors." Id. at 1000. (Fn. ref. omitted.) There were over 1,400 other cases pending before this Court involving similar issues and factual situations. Id. at 970. During 1980, petitioner participated in the GGS and GIM program with others through accounts bearing the designations Mikado and Maggs, Gabriel, and Hall. On their 1980 income tax return, petitioners claimed a loss from the purported forward contracts. By letter dated May 17, 1983, respondent requested that petitioners file a partnership return for their 1980 participation with other individuals in the purported forward contracts. Paragraph 3 of the letter provided in *541 part: We hereby request you file a partnership return. If a return is not filed * * * within 30 days we will initiate procedures to process a "Substitute for Return" and assess applicable penalties under IRC 6698 for failure to file. * * *
In response, petitioner informed respondent by letter dated June 7, 1983, that he was a "nominee" for certain individuals who were coowners of undivided interests in the underlying forward contracts. Petitioner stated that it was his and the other coowners' understanding and intention that each person had acquired separate undivided interests in the forward contracts. Notwithstanding the 30-day deadline, respondent never took the action described in the above letter nor made any other attempt to treat petitioner and the other coowners as a partnership. On April 30, 1986, this Court entered a decision in which petitioners agreed to the disallowance of the 1980 losses from the purported forward contracts. During the taxable year 1981, petitioner participated in the GGS and GIM program through an account bearing the name G2MH (which stands for George Gabriel, Warren Maggs, and Peter Hall). Petitioner held a 50-percent ownership interest *542 in the G2MH account, while Messrs. Hall and Maggs each held a 25-percent interest. In a letter dated March 30, 1981, to the attention of petitioner, GIM confirmed receipt of $ 7,000 from G2MH. The $ 7,000 consisted of checks made payable to GIM, not G2MH, individually written by petitioner and Messrs. Hall and Maggs. Petitioner did not intend or consider G2MH to be a partnership. Petitioner, Mr. Hall, and Mr. Maggs could withdraw their share of the "investment" without each other's consent. Petitioner and Messrs. Hall and Maggs did not execute a written partnership agreement for G2MH and did not apply for, or receive, a taxpayer identification number for G2MH. G2MH did not file a written statement electing exclusion from the provisions of subchapter K of the Internal Revenue Code. At no time did G2MH maintain a bank account. Petitioner made no investment decisions on behalf of G2MH. The only involvement petitioner had with G2MH was: (1) Depositing a check with GIM in 1981; (2) signing a client agreement with GIM and executing a limited power of attorney to GIM, both in an individual capacity; and (3) reporting the final results of the forward contracts to Messrs. Hall and *543 Maggs. The total amount of time petitioner spent on matters related to G2MH was less than one-half day. For the taxable year 1981, petitioner and Messrs. Hall and Maggs reported losses with respect to the purported forward contracts in proportion to the amount each contributed to the G2MH account. On their 1981 return, petitioners reported the loss as "STCL From Trading Various Futures and Forward Contracts". The loss attributable to the G2MH account was not reported as a partnership loss on Schedule E. On Schedule E of their 1981 return, petitioners claimed losses from a partnership known as Eagle Creek Timber Co. (Eagle Creek) in the amount of $ 44,689. Petitioners also reported the activities of three other partnerships on their 1981 Schedule E, named Enertex Goodall #8, #11, and #12. Petitioners have consistently taken the position that G2MH was not a partnership. In a letter dated June 7, 1983, petitioner represented to respondent that the "transactions occurred in a tenancy-in-common". On April 15, 1985, petitioners executed a Form 872A (Special Consent to Extend the Time to Assess Tax). The Form 872A was executed on April 22, 1985, by revenue agent Ronald L. Giebenhain *544 on behalf of respondent. The Form 872A provided: The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (A) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from, any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return), (B) the tax basis of the taxpayer's interests in such partnerships or organizations treated by the taxpayer as a partnership, (C) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment, or other disposition of taxpayer's interest in such partnerships or organizations treated by the taxpayer as a partnership, (D) items affected by continuing tax effects caused by adjustments to any prior tax return, and (E) any consequential changes to other items based on such adjustment.
Petitioner believed the Form 872A applied only to the Eagle Creek partnership. The cover letter transmitting the unsigned Form 872A from respondent's agent to petitioners made reference only to the Eagle Creek partnership. Before signing the Form 872A, petitioner contacted Revenue Agent *545 Giebenhain to verify that the consent applied only to Eagle Creek. Mr. Giebenhain told petitioner that it was his intent to limit the consent agreement to Eagle Creek. Respondent's notice of deficiency for 1981 was mailed to petitioners on September 20, 1990. In the notice of deficiency, the Eagle Creek losses were referred to as Schedule E partnership losses. The G2MH activity was referred to as commodities and capital losses. [2]
OPINION Petitioners contend that the adjustments made by respondent, relating to G2MH, are barred by the statute of limitations. Section 6501(a) provides that the amount of any tax shall be assessed within 3 years after the return is filed. Respondent's notice of deficiency with respect to petitioners' 1981 return was mailed on September 20, 1990, which exceeded the normal 3-year period of limitations provided in section 6501(a). Petitioners, however, executed Form 872A *546 on April 15, 1985, less than 3 years after filing their 1981 return. The executed Form 872A extended the time during which respondent could assess income tax due with respect to partnership items on petitioners' 1981 return. Under these circumstances, petitioners must establish that the executed Form 872A does not extend the period of limitations with respect to the portion of the deficiency attributable to the G2MH adjustment. Schulman v. Commissioner, 93 T.C. 623, 639 (1989); Kronish v. Commissioner, 90 T.C. 684, 692-693 (1988); Adler v. Commissioner, 85 T.C. 535, 540-541 (1985). Petitioners argue that the losses attributable to G2MH were not within the scope of the special consent because G2MH was not a partnership. Petitioners also argue that there was no mutual assent between the parties to extend the special consent adjustments related to G2MH. Consequently, in petitioners' view, respondent's notice of deficiency was untimely. The Form 872A executed by the parties clearly extends the period of limitations to petitioners' "distributive share of any item of income, gain, loss, deduction, *547 or credit of, or distribution from, any partnership (or any organization treated by the taxpayer as a partnership on the taxpayer's tax return)." Thus, if G2MH was not a partnership, and was not treated as a partnership on petitioners' return, the Form 872A will not operate to toll the statute of limitations. Section 7701(a)(2) defines a "partnership" and "partner" as follows: (2) Partnership and Partner. -- The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.
The definition of a partnership in section 7701(a)(2) is virtually identical to that in section 761(a). Section 1.761-1(a), Income Tax Regs., further provides: A joint undertaking merely to share expenses is not a partnership. * * * Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an *548 individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent. * * *
Whether parties have formed a partnership is a question of fact, and while all circumstances are to be considered, the essential question is whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise. Luna v. Commissioner, 42 T.C. 1067, 1077 (1964); Commissioner v. Tower, 327 U.S. 280, 287 (1946) ("the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact".). In Commissioner v. Culbertson, 337 U.S. 733, 742 (1949), *549 the Supreme Court stated: The question is * * * whether, considering all the facts -- the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent -- the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. [Fn. ref. omitted.]
In Luna v. Commissioner, supra at 1077-1078, this Court focused on certain factors as relevant in determining whether a partnership exists. The Court stated: The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the *550 agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. [Id.]
Mere coownership of property does not create a partnership for Federal tax purposes. Marinos v. Commissioner, T.C. Memo. 1989-492 (citing Estate of Appleby v. Commissioner, 41 B.T.A. 18, 20 (1940), affd. 123 F.2d 700 (2d Cir. 1941)); Powell v. Commissioner, T.C. Memo. 1967-32. The Board of Tax Appeals in Estate of Appleby v. Commissioner, supra at 21, stated that the statutory definition of a partnership does not include "income derived by tenants in common from simple ownership." In Powell, where *551 (1) real property was owned jointly by the taxpayer and five others; (2) there was no partnership agreement; (3) the rental income was collected by an agent and reported on a partnership return; and (4) the joint owners paid an insurance premium, paid to have walls demolished, and paid to have the property appraised, this Court stated that, to find a partnership under such circumstances, "might very well destroy the separate validity for tax purposes of almost all forms of coownership." Powell v. Commissioner, supra.
Partnership status cannot be avoided, however, by simply designating a joint undertaking as a "tenancy in common" rather than as a "syndicate, group, pool, joint venture" or by expressly providing that the venture is not to be considered a partnership. See, e.g., Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 514-515 (7th Cir. 1980), affg. 72 T.C. 521 (1979); Marinos v. Commissioner, supra; Underwriters Ins. Agency of America v. Commissioner, T.C. Memo. 1980-92. In Marinos v. Commissioner, supra, *552 this Court stated: "The regulations and relevant case law indicate the distinction between mere co-owners and co-owners who are engaged in a partnership lies in the degree of business activity of the co-owners or their agents." In Madison Gas, the Court of Appeals for the Seventh Circuit referred to this as the "business activities test". In Underwriters Insurance, this Court held that the coowners were partners since the vessels were not held merely for investment, nor was the taxpayer a passive owner but, instead, actively engaged in the fishing business. Respondent argues that "investment groups need not carry on business" to be considered partnerships under the Code. In support, respondent relies upon section 761(a)(1) and section 1.761-2(a), Income Tax Regs.[3] It is apparent from these sections that coowners of investment property need not actively conduct a business to fall within the statutory definition of a partnership. We note, however, that investment clubs are considered by the Commissioner to have an objective to carry on business for purposes of section 7701. See Rev. Rul. 75-523, 1975-2 C.B. 257; G.C.M. 33,469 *553 (Mar. 28, 1967) ("it has been a long standing position of the Service that an objective to carry on business and divide the gains therefrom is a hallmark of a partnership, and that for purposes of classification, investment clubs have been held to possess this objective"). Indeed, investment partnerships and other "joint ventures" that fall within the statutory definition of a partnership normally engage in business-related activities. Thus, for purposes of the facts before us, the important distinction lies in whether the coowners passively or actively engage in activities that fall within the statutory definition of a partnership. *554 Respondent argues that G2MH meets the elements of section 1.761-2(a)(2), Income Tax Regs. We disagree. We interpret section 1.761-2(a)(2), Income Tax Regs., to apply only after coowners fall within the statutory definition of a partnership under section 761(a). See Madison Gas & Elec. Co. v. Commissioner, 633 F.2d at 515 ("In short, Section 761(a) allows unincorporated associations * * * which fall within the statutory definition of a partnership, to elect out of Subchapter K." (Fn. ref. omitted; emphasis added.)) In other words, to be an investing partnership entitled to elect out of subchapter K, coowners must first form a partnership. We find that petitioner and Messrs. Hall and Maggs were merely passive copurchasers of an interest in the GGS-GIM program and that their interest in the G2MH account did not constitute a partnership as defined by section 761(a) or section 7701(a)(2). At no time did G2MH open a bank account. The extent of their activity with respect to G2MH was simply to pay $ 7,000 to GGS and GIM in order to participate in the program. Everything after that point was to be handled by GGS and GIM. In the notice of deficiency *555 respondent contends that the alleged forward contracts were shams, that the losses were not shown to be bona fide, and that the transactions were not entered into for profit. [4] Petitioners have not shown that respondent's contentions are erroneous or incorrect. To the contrary, the parties agree that the forward contracts, which petitioners participated in, are indistinguishable from the forward contracts that were the subject of Brown v. Commissioner, 85 T.C. 968 (1985), affd. sub nom. Sochin v. Commissioner, 843 F.2d 351 (9th Cir. 1988). In Brown, we found that the purported forward contract transactions of GGS and GIM were factual shams set up solely for tax-avoidance purposes. Id. at 1000. Therefore, in this case, as in Brown, the forward contracts G2MH purportedly invested in never existed; consequently, there were no investment activities by GGS and GIM on behalf of G2MH. *556 Petitioners consistently represented G2MH as a tenancy in common and not a partnership or joint venture. Petitioner and Messrs. Hall and Maggs did not execute a written partnership agreement for G2MH and did not apply for, or receive, a taxpayer identification number. Petitioners reported the losses as "STCL From Trading Various Futures and Forward Contracts" and not as Schedule E partnership losses. During respondent's review of petitioners' 1981 Federal income tax return, petitioner described G2MH as a "tenancy-in-common". Respondent argues that Marinos v. Commissioner, T.C. Memo. 1989-492, and Press v. Commissioner, T.C. Memo. 1986-398, support the contention that G2MH was a partnership. We disagree. In Marinos and Press, the joint venturers were found to have been actively engaged in business activities, and they represented to respondent that they were "joint venturers". In Marinos, this Court stated that it was the "degree of business activity" that caused the relationship to be characterized as a partnership. The coowners in Marinos agreed to lease a master audio record from a company; agreed *557 to contract with another company for production and distribution of the recording; and, on their tax return, referred to the venture as a "joint venture" and claimed an investment credit on the master recording. Marinos v. Commissioner, supra.
Similarly, in Press, the decisive factor was that the coowners organized the joint venture to carry on the business of mining peat. Press v. Commissioner, supra. For example, the coowners entered into an organizational agreement stating that they would own, as tenants in common, a leasehold interest in land to mine peat. Id. They entitled the venture "Little Mud Pond Swamp Joint Venture". Id. Furthermore, they appointed an agent that executed a mining lease, giving the agent the exclusive right to mine peat from a 30-acre plot of land. Id. Therefore, Marinos and Press are distinguishable from the facts before us. We find that petitioner and Messrs. Hall and Maggs did not form a partnership and that the execution of Form 872A did not extend to adjustments related to G2MH. [5] Therefore, we hold respondent's notice of deficiency untimely with regard *558 to the adjustments related to G2MH. Decision will be entered under Rule 155. Footnotes
1. References to petitioner in the singular will refer only to George N. Gabriel.↩
2. There is no mention of a partnership in relation to G2MH in the notice of deficiency. See infra↩ note 4.
3. Sec. 761(a)(1) defines partnership as follows: Under regulations the Secretary may, at the election of all the members of an unincorporated organization, exclude such organization from the application of all or part of this subchapter, if it is availed of -- (1) for investment purposes only and not for the active conduct of a business,
Sec. 1.761-2(a), Income Tax Regs., provides that certain investing partnerships may be excluded from all or part of the provisions of subchapter K. Sec. 1.761-2(a), Income Tax Regs., states: (2) Investing partnership. Where the participants in the joint purchase, retention, sale, or exchange of investment property-- (i) Own the property as coowners, (ii) Reserve the right separately to take or dispose of their shares of any property acquired or retained, and (iii) Do not actively conduct business or irrevocably authorize some person or persons acting in a representative capacity to purchase, sell, or exchange such investment property, although each separate participant may delegate authority to purchase, sell, or exchange his share of any such investment property for the time being for his account, but not for a period of more than a year, then such group may be excluded from the application of the provisions of subchapter K under the rules set forth in paragraph (b) of this section.↩
4. In the notice of deficiency, respondent stated: It is determined that for the taxable year 1981 the gains and losses claimed by you on your income tax return from alleged forward contracts involving government securities cannot be recognized since such alleged transactions are shams entered into for tax avoidance purposes. It is determined that the gains and losses claimed by you on your income tax returns for 1981 from alleged forward contracts involving government securities cannot be recognized, as you have not established that such gains and losses occurred or occurred in the manner claimed. Moreover, it is determined that these transactions lack economic substance. Furthermore, none of the alleged transactions were completed and closed as each of the alleged transactions in question was but one step in a series of events which for tax purposes were fully integrated, and constitutes but a single transaction.
In addition, such transactions do not represent a sufficient change in economic position to justify recognition for tax purposes of the losses or gains as claimed, and purported losses are a distortion of economic reality. It is also determined that none of the losses claimed by you in connection with such transactions (whether capital or ordinary), is deductible under Section 165, Internal Revenue Code, because you have not established that such losses were bona fide, or that the transactions were entered into for profit within the meaning of that section, but on the contrary, it would appear that they were entered into solely or primarily to reduce income taxes by converting short term ordinary income into a capital gain, and defer the reporting of same. Also, since your only reason for entering into the transactions was tax avoidance, amounts paid for investment counseling, commissions and cancellations fees are not allowable as deductions. Additionally, the claimed losses are disallowed because: 1. Such losses arose from the sale or disposition of securities and substantially identical securities were acquired close enough in time to the sale or disposition so that Section 1091 disallowed the claimed losses; 2. The alleged forward contracts were in substance option contracts and it has not been established what your basis in such option contracts [was]; or 3. Such losses cannot be allowed because it has not been established that you are at risk within the meaning of Section 465 in the amount of the claimed losses. Accordingly, taxable income is increased $ 112,122.00 for the taxable year 1981.↩
5. This conclusion is consistent with the context in which Form 872A was solicited. In concluding that G2MH was not a partnership, we need not address petitioners' second argument regarding mutual assent. See supra↩ p. 8.